# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HEIDI STIRRUP, personally and in her official capacity
as a Member of the United States Air Force Academy
Board of Visitors,
4205 James Madison Hwy
Haymarket, Virginia 20169,

MARK GREEN, M.D., personally and in his official
capacity as a member of the United States Military
Academy Board of Visitors, the United States House
Armed Services Committee, and the United States
Congress,
2446 Rayburn House Office Building
Washington, DC 20515,

RALPH NORMAN, personally and in his official
capacity as a member of the United States Congress,
569 Cannon House Office Building
Washington, SC 20515,

JOHN DOES #1-2, personally and in their official
capacities as cadets at the United States Air Force
Academy;

JOHN DOE #3 and JANE ROE #4, personally and in
their official capacities as cadets at the United States
Military Academy, and

JOHN AND JANE ROES #5-10, personally and in their
capacities as parents of JOHN DOES #1-3 and JANE
ROE #4,

<em>Plaintiffs</em>,

v.

UNITED STATES DEPARTMENT OF DEFENSE, c/o
Office of General Counsel,
1600 Defense Pentagon
Washington, DC 20301,

GENERAL LLOYD J. AUSTIN, III USA (RET), in his
official capacity as the United States Secretary of
Defense,
1000 Defense Pentagon
Washington, DC 20301,

**Civil Action No. 21-1893 (TJK)**

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

UNITED STATES DEPARTMENT OF THE AIR
FORCE, c/o Office of General Counsel
Room 4E386
Pentagon
Washington, DC  20301,

FRANK KENDALL, in his official capacity as the
Secretary of the Air Force, c/o
Office of General Counsel
Room 4E386
Pentagon
Washington, DC  20301

UNITED STATES AIR FORCE ACADEMY
2304 Cadet Drive, Suite 2100
Colorado Springs, CO  80848,

LIEUTENANT GENERAL RICHARD M. CLARK, in
his official capacity as Superintendent, United States Air
Force Academy, 2304 Cadet Drive, Suite 2100
Colorado Springs, CO  80848,

UNITED STATES DEPARTMENT OF THE ARMY
c/o Office of General Counsel,
104 Army Pentagon
Washington, DC  20310,

CHRISTINE WORMUTH, in her official capacity as the
Secretary of the Army (Acting); c/o Office of General
Counsel,
104 Army Pentagon
Washington, DC  20310

UNITED STATES MILITARY ACADEMY,
600 Thayer Rd 7th Floor, West Point, NY 10996,

LIEUTENANT GENERAL DARRYL A WILLIAMS,
in his official capacity as Superintendent, United States
Military Academy, 600 Thayer Rd 7th Floor, West
Point, NY 10996,

UNITED STATES DEPARTMENT OF THE NAVY,
c/o Office of General Counsel,
1000 Navy Pentagon, Room 4D652
Washington, DC  20350,

THOMAS W. HARKER, in his official capacity as the
Secretary of the Navy (Acting), c/o
Office of General Counsel
Room 4D652
1000 Navy Pentagon
Washington, DC  20350,

UNITED STATES NAVAL ACADEMY,
121 Blake Road
Annapolis, MD  21401, and

VICE ADMIRAL SEAN S. BUCK, in his official
capacity as Superintendent, United Stated Naval
Academy,

*Defendants.*

_____

## STATEMENT OF THE CASE

1.      In this action, the Plaintiffs ask the Court to issue a declaratory judgment and a preliminary and permanent injunction to immediately restore the full operation of the United States Air Force Academy Board of Visitors ("USAFA BOV"), the United States Military Academy Board of Visitors ("USMA BOV") and the United States Naval Academy Board of Visitors ("USNA BOV") (collectively "BOVs") by declaring that Defendants' directives and actions suspending the operations of the  BOVs are illegal; to enjoin the Defendants from continuing to suspend the operations of the  BOVs; and to mandate that the Defendants immediately restore and allow restoration of the normal and proper operations of the  BOVs as required by federal statutes and other laws.

2.      The BOVs are oversight boards created by Congressional statutory mandates to investigate, oversee and make recommendations about the United States Air Force Academy ("Air Force Academy" or "USAFA"), the United States Military Academy ("West Point" or "USMA")

and the United States Naval Academy ("Naval Academy" or "USNA") (individually also "Academy" and collectively "Academies"), respectively, to the Defendants, respectively, and to the United States House Armed Services Committee, the United States Senate Armed Services Committee, and/or the President of the United States.  The oversight and investigative authority of the BOVs thus flows from the powers of Congress set forth in Article I of the U.S. Constitution. Simply stated, the functions of the BOVs are a creature of Article I oversight functions.  It is precisely for this reason that Members of Congress, not members of the Executive Branch, serve as authorized members of the service academies' Boards of Visitors, and it is precisely for this reason that three such Members are Plaintiffs in this action.  Congress recognized that the Executive Branch could not provide adequate and unbiased oversight on its own administration of the Nation's military service academies, and therefore created the Boards of Visitors to provide such independent and necessary oversight over the service academies.

3.      The BOVs have been unlawfully suspended since on or about February 2, 2021, by the Defendant Department of Defense, a federal agency whose powers and authority derive not from Article I, but from Article II, of the U.S. Constitution. The suspension of the BOV's investigative and oversight duties is a violation of the constitutional separation of powers doctrine and has caused grave harm to cadets and midshipmen at the Academies, their parents, the United States Congress, the institutional Defendants and the American people.  Throughout the period of suspension, one or more Defendants and others have made critical decisions  about  nationally important institutional problems at the service academies  including, *inter alia*, 1) alleged "systemic racism" and an attendant, highly-controversial implementation of a radically new and fundamentally unconstitutional and divisive Critical Race Theory (CRT) "race training" curriculum, including a) unilateral indoctrination of appointees to the Academies  into CRT even

before the appointees have been enrolled as cadets and midshipmen at the Academies and b) engaging in viewpoint discrimination by assigning cadets and midshipmen test grades based on whether their answers to ideologically-skewed and misleading questions about race conform to the racist, politically and culturally "acceptable" views of CRT; 2) the resolution of  unprecedentedly large cheating scandals at the Academies,   involving more than 300 alleged cadet and midshipmen Honor Code or Honor Concept violators at one or more Academies; 3) the implementation of policies governing the surveillance, detection and purging of  "radical extremists" from the Academies, defined by DoD only as "white extremists" to the exclusion of extremists of the radical Left; 4) the handling of  sexual assaults at the Academies; 5) the response to and further prevention of an unprecedently large number of cadet or midshipman suicides at one or more Academies; 6) the implementation of pre- and post-COVID-19 protocols, including the suspension of cadets' and midshipmen's attendance at church and synagogue services, and discrimination against/punishment of cadets and midshipmen who exercise their right not to receive a COVID vaccine, and 7) the repeated, deliberate deprivation of cadets' and midshipmen's due process rights in the arbitrary and capricious execution of the Academies' administrative conduct and performance systems.   Defendants and others have made countless decisions concerning these vitally-important issues without *any* input or recommendations from, and without any investigation, evaluation or oversight by, any BOV or member of any BOV, including but not limited to by Plaintiffs Heidi Stirrup and Congressman Mark Green, M.D..

4.     Of particular, grave concern to cadets and midshipmen, their parents and faculty at the Academies, and the American public generally, is the new, openly racist CRT curriculum being taught at the Academies.  The topic of this new curriculum has been questioned recently, both in a recent United States Senate hearing and in the mainstream media.

5.     Lest there be any doubt as to the immediacy and magnitude of the radical ideological curriculum changes and the threats Defendants seek to immunize from constitutional and statutory oversight and accountability by suspending the BOVs, Lynne Chandler Garcia ("Garcia"), an associate professor of political science at the United States Air Force Academy, published an editorial in the Washington Post on July 6, 2021, entitled, "I'm a professor at a U.S. Military Academy.  Here's why I teach critical race theory."  In that Op-Ed, Garcia asserted, among other things, that her espousal of CRT "helps students identify the structural racism and inequality that has been endemic in American society.  And it provides methods for deconstructing oppressive beliefs, policies and practices to find solutions that will lead to justice."  See https://www.washingtonpost.com/opinions/2021/07/06/military-academies-should-teach-critical-race-theory/. Meanwhile, the Air Force Academy's Board of Visitors sits powerless even to review, let alone call into question or stop, this ideological, anti-American juggernaut of CRT, having been illegally stripped of its powers and abilities to discharge its statutory duties to investigate, oversee and recommend policy changes.

6.     While CRT apologists may applaud Garcia's statements and actions, Congressman Doug Lamborn, a Member of the House of Representatives, of the House Armed Services Committee and of the AFA BOV, whose constituency includes the Air Force Academy, is, on the other hand, appalled.  In response to Assistant Professor Garcia's unabashed embrace of CRT and the Marxist ideology underpinning it, Congressman Lamborn issued a press release, attached as Exhibit 1, condemning the indoctrination of Air Force Academy cadets into CRT, including, in pertinent part, the following:

> Just two weeks ago, Secretary Austin testified before the House Armed Services Committee that critical race theory is not something being taught, pushed, or embraced in our military.  I am deeply concerned that an associate professor at the United States Air Force Academy has

enthusiastically endorsed teaching critical race theory to the future officer corps of our Space Force and Air Force.  This is in direct violation of the clearly expressed intent of the Secretary of Defense.  As a member of the United States Air Force Academy's Board of Visitors, I oppose teaching our cadets that the country they serve is fundamentally racist.  Critical race theory is an anti-American ideology rooted in Marxism and has no place in any of our service academies.

7.   Numerous specific legal requirements and duties of the Academies' BOVs and of the Plaintiffs and the Defendants are being violated or unfulfilled because of the suspension of the operations of the Academies' BOVs. The Academy BOVs, oversight boards by statute, are unable to perform their duties because of their illegal suspension.

## JURISDICTION AND VENUE

8.   The Court has jurisdiction under 28 U.S.C. § 1331.

9.   The Court may award declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, the First and Fifth Amendments to the United States Constitution, and the constitutional Separation of Powers Doctrine.

10.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 1391(e).

## PARTIES

11.   Plaintiff Heidi Stirrup ("Stirrup") is a resident of Haymarket, Virginia; is a member of the USAFA BOV; and has been adversely affected by the suspension of the USAFA BOV both personally and in her capacity as a member of the USAFA BOV.

12.   Plaintiff Mark Green, M.D., is a resident of and the United States Congressman for the 7th Congressional District of Tennessee; is a physician; and is a member of the USMA BOV and the United States House Armed Services Committee and the United States House of Representatives. He is also a 1986 graduate of West Point and a decorated Army combat veteran,

giving him special insight into how West Point should be preparing its cadets to serve as future Army officers. He has been adversely affected by the suspension of the USAFA BOV, the USNA BOV and the USMA BOV both personally and in his capacity as a Member of Congress and as a member of the USMA BOV.

13.     Plaintiff Ralph Norman is a resident of and the United States Congressman for the 5th Congressional District of South Carolina; is a member of the United States House of Representatives; and has been adversely affected by the suspension of the USAFA BOV, the USNA BOV and the USMA BOV both personally and in his capacity as a Member of Congress.

14.     Plaintiffs John Does #1-2 are two cadets at the United States Air Force Academy who have been adversely affected by the suspension of the USAFA BOV both personally and in their capacities as USAFA cadets and who must remain anonymous to avoid retaliation by the Defendants for being plaintiffs in this lawsuit.

15.     Plaintiffs John Doe #3 and Jane Roe #4 are two cadets at the United States Military Academy who have been adversely affected by the suspension of the USMA BOV both personally and in their capacities as USMA cadets and who must remain anonymous to avoid retaliation by the Defendants for being plaintiffs in this lawsuit.

16.     Plaintiffs John Doe and Jane Roe # 5-10 are parents of John Does and Jane Roe #1-4; have been adversely and personally affected by the suspension of the USAFA BOV or USMA BOV, respectively; and must remain anonymous to avoid retaliation by the Defendants for being plaintiffs in this lawsuit.

17.     Defendant the United States Department of Defense is an agency of the United States, and is responsible for the administration of the Department of the Air Force and the Air Force Academy.

18.     Defendant General Lloyd J. Austin III, USA (Ret), is the Secretary of Defense ("SecDef") and is named as a party in his official capacity.

19.     Defendant the United States Department of the Air Force is an agency of the United States and is responsible for the administration of the Air Force Academy.

20.     Defendant John P. Roth is the Acting Secretary of the Air Force and is named as a party in his official capacity.

21.     Defendant the United States Air Force Academy is an agency of the United States and is responsible for teaching and training cadets to become Air Force officers.

22.     Defendant Lieutenant General Richard M. Clark, USAF, is the Superintendent of the Air Force Academy and is named as a party in his official capacity.

23.     Defendant the United States Department of the Army is an agency of the United States and is responsible for the administration of the United States Military Academy.

24.     Defendant Christine Wormuth is the Acting Secretary of the Army and is named as a party in her official capacity.

25.     Defendant the United States Military Academy is an agency of the United States and is responsible for teaching and training cadets to become Army officers.

26.     Defendant Lieutenant General Darryl A. Williams, USA, is the Superintendent of the United States Military Academy and is named as a party in his official capacity.

27.     Defendant the United States Department of the Navy is an agency of the United States and is responsible for the administration of the United States Naval Academy.

28.     Defendant Thomas W. Harker is the Acting Secretary of the Navy and is named as a party in his official capacity.

29.     Defendant the United States Naval Academy is an agency of the United States and is responsible for teaching and training midshipmen to become Naval officers.

30.     Defendant Vice Admiral Sean S. Buck, USN, is the Superintendent of the United States Naval Academy and is named as a party in his official capacity.

## STATEMENT OF FACTS

### A.  UNITED STATES AIR FORCE ACADEMY

31.     On February 4, 2021, Plaintiff Heidi Stirrup and other Presidential (but not Congressional) appointees to the AFA BOV received an email, attached as Exhibit 2, from Anthony McDonald, a GS-15 federal official designated to assist with the AFA BOV.  The email states, in pertinent part, as follows:

> I am reaching out today to inform you that the **Secretary of Defense has suspended the operations** of all DoD Advisory Committees pending completion of a Zero-Based Review with our review being due to OSD **no later than 30 April 2021**. You will likely hear about advisory committees being disestablished and board members released from service **but given our committee is non-discretionary (required by law) it will remain in place and your board membership will not be impacted**.
>
> What does the suspension mean for our board? It **means the board will not hold any meetings (formal, preparatory, etc.) or otherwise undertake official board business that would drive expenditure of public funds until the Secretary of Defense has reviewed our business case analysis and lifted suspension of our advisory committee**. As such, our **previously scheduled 8 April 2021 meeting will be rescheduled to a later date to be determined.**
>
> In the meantime, Headquarters Air Force and USAFA staff still have administrative requirements that must be completed in accordance with the Federal Advisory Committee Act and DoD policy such as record-keeping, publishing of minutes, reports, etc. as well as administrative functions related to fully onboarding the new members (background/clearance, ethics, disclosures, etc.), I'd ask for your full and timely cooperation in those matters. Finally, you will continue to receive periodic updates on matters germane to the board.

(Emphasis added.)

Accompanying this email were two Memoranda, dated January 30, 2021 and February 2, 2021, respectively, and attached as Exhibit 3, from the Office of Defendant Secretary of Defense suspending the Boards of Visitors of the United States Air Force Academy, the United States Military Academy, and the United States Naval Academy.

32.     On February 4, 2021, and on March 3, 2021, Plaintiff Stirrup requested in writing that Defendants Department of Defense and Department of the Air Force provide to her the legal authority, if any, allowing DoD to suspend the USAFA BOV.  A copy of this request is attached as Exhibit 4.  To date, no such legal authority has been identified by anyone.  That is because no such authority exists.

33.     On information and belief, for several weeks after the activities of the USAFA BOV were suspended, Defendants Department of Defense and Department of the Air Force failed to notify the Congressional members of the USAFA BOV that DoD had suspended the USAFA BOV. Attached as Exhibit 5 is a letter dated June 23, 2021, in which Congressman Doug Lamborn (a member of the USAFA BOV), Congressman Don Bacon (a member of the USAFA BOV) and Congressman Michael Waltz communicated their objections to Defendant Austin concerning the suspension by DoD of the Boards of Visitors of the military academies.

34.     On multiple occasions subsequent to the wrongful suspension of the USAFA BOV, Plaintiff Stirrup asked that Defendants provide information about the Air Force Academy.  Each of those requests was met either with no response whatsoever or an express denial.

35.     For example, as stated above, Plaintiff Stirrup asked Defendants Department of Defense and Department of the Air Force to identify the legal authority allowing the suspension of the USAFA BOV, but none has been provided.  In addition, in an email dated March 15, 2021, Plaintiff Stirrup asked Defendant Superintendent of the Air Force Academy for information

concerning 1) the manner in which the Air Force Academy was teaching about and dealing with racial issues at the Air Force Academy, including a controversial video published by Air Force Academy football team coaches appearing to politically and publicly support Black Lives Matter; 2) whether and how the Air Force Academy was regulating social media publications by cadets that might have racial, violent or insubordinate content; and 3) how and by what standards the Air Force Academy would be purging "extremism" among cadets and others stationed at the Air Force Academy. On March 18, 2021, Defendant Lieutenant General Richard M. Clark responded to Plaintiff Stirrup's information request by stating "Unfortunately, we are not conducting BoV business until [the Office of the Secretary of Defense] indicates that we can resume committee activity during the SecDef's review on committee activity."  A copy of Plaintiff Stirrup's request and the Superintendent's failure to provide the information requested is attached as Exhibit 6.

36.     On February 5, 2021, Plaintiff Stirrup requested specific documents about the Air Force Academy Honor System and teachings about race from Defendant Department of the Air Force through Anthony McDonald, the USAFA BoV Designated Federal Officer,  and others. None of the documents requested was provided.

37.     In addition, on April 17, 2021, Plaintiff Stirrup requested specific information about the Honor Code System at the Air Force Academy from the Chairman of the USAFA BOV, copied to the Superintendent of the Air Force Academy and to Anthony McDonald, an official at the Department of the Air Force in charge of the USAFA BOV.  None of the information requested was provided.

38.     On or about August 2, 2021, Defendant USAFA Superintendent Lieutenant General Richard M. Clark published and widely distributed to all available Air Force Academy graduates and to others the letter attached as Exhibit 7, in which he acknowledged that in the Spring of 2020

the Air Force Academy had "an unprecedented number of honor [code violation] cases [involving] 244 cadets" and that "[t]his sharp increase in violations drove an intensive Honor System Review." *Id*. The Superintendent stated in part in that letter:

> The review confirmed most cadets view the Honor System as a predominantly punitive and threatening mechanism to enforce the Honor Code. It revealed a pressing need to bolster character development, particularly for underclassmen, while still maintaining appropriate consequences for honor system violations. These findings demand immediate attention and a holistic approach to shift our culture and more deliberately inspire honorable living.

The Air Force Academy has been handling these acknowledged problems with the USAFA Honor System for months without investigation, input or recommendations by the USAFA BOV because the Defendants unlawfully suspended the USAFA BOV.

39.     On July 7, 2020, the Air Force Academy football team coaches released a video supporting Black Lives Matter and that resulted in an article in the Colorado Springs Gazette entitled "Air Force football takes firm social stance with video in support of Black Lives Matter." That video can be accessed by googling "USAFA BLM." Numerous Air Force Academy graduates and others strongly opposed the video and demanded that the Air Force Academy disassociate itself from the video, because it involved the Air Force Academy in politics when the military is supposed to be apolitical and because the video appeared to align the Air Force Academy with pro-Marxist, anti-American teachings and goals of the Black Lives Matter organization.

40.     During January 2021, the Air Force Academy created a cadet Diversity and Inclusion Reading Room ("Reading Room") at the Air Force Academy. See https://www.usafa.af.mil/News/News-Display/Article/2508630/exploring-big-ideas-diversity-and-inclusion-reading-room-opens-at-academy/;https://www.koaa.com/news/covering-colorado/special-reading-room-offers-afa-cadets-a-safe-space-for-open-discussion; Graduates of and cadets at the Air Force Academy have complained that the publications in that Reading Room appear to include

books about the "Black Panthers," "early Malcom X," Black Lives Matter supporters, Cesar Chavez and incorrect and misleading Leftist propaganda; and to exclude black authors with markedly different views, such as Shelby Steele, Thomas Sowell, or Candace Owens), a clear indication of the viewpoint discrimination that is the CRT calling card.

41.     On or about May 11, 2021, a Freedom of Information Act ("FOIA") request was sent to the Air Force Academy asking for the names of books and the identity of all magazines and other publications about race, racial issues and racism at the Air Force Academy Diversity and Inclusion Reading Room, but to date none of that requested information has been provided. The USAFA BOV has not only the statutory authorization, but indeed the statutory obligation, to ensure that cadets are not taught or exposed exclusively to ideological and unbalanced history that undermines and unfairly denigrates the United States and are not discriminated against because they may hold or express viewpoints to the contrary. Defendants have materially and deliberately frustrated that oversight by unlawfully suspending the USAFA BOV.

42.     According to a retired Air Force Colonel who, until July 2020, was a Permanent Professor at the Air Force Academy and head of the USAFA's Center for Character and Leadership Development: (a) all or nearly all of the material in the USAFA Diversity and Inclusion Reading Room is pro-Black Lives Matter and pro-Marxist thought; (b) many sponsored speakers at the USAFA's annual National Character and Leadership Symposium ("NCLS") during recent years, especially during 2017-2019, have been hostile to white males; (c) some sponsored speakers at USAFA NCLS conferences in recent years have been very clearly aligned politically and ideologically with critical race theory and woke culture, resulting in cadet feedback clearly hostile and critical of why they were being indoctrinated instead of being engaged in relevant content; (d) athletics over-identification with Black Lives Matter and woke movements at the USAFA has been

particularly troublesome at the USAFA; (e) a student at the USAFA Preparatory School who claimed to be victimized by racial slurs later admitted to writing the racial slurs but never was held accountable and the USAFA never corrected the record to restore institutional character; (f) the USAFA has implemented major recent curriculum changes; (g) in the absence of USAFA BOV oversight, there are  reduced accountability and procedural safeguards at the USAFA; and (h) the USAFA BOV can, if operational, (1) be a powerful check against political over-correction, whether Left or Right; (2) help ensure balance and limit ostracization of and discrimination against those who do not subscribe to Leftist content and alignment; and (3) help ensure taxpayer return on investment and supporting academic courses of instruction needed by the military.

43.     During or about June 2021, all appointees (incoming Freshmen) to the Air Force Academy, including Plaintiffs John Doe #1 and #2 were required, for the first time in the history of the Air Force Academy, to take and be quizzed about on-line training consisting of Leftist propaganda provided by woke civilian contractors stating or implying that people with white skin color are and should feel guilty because they are racist oppressors, classic CRT tenets.  Part of this training may be viewed at https://rumble.com/vinb41-diversity-and-inclusion-training-video.html. Plaintiffs John Does #1 and #2 and their parents, plaintiffs John Does 5-6 and Jane Roes # 7-8, strongly have objected to this training as being misleading and racist propaganda and for classifying and guilting cadet appointees based on the color of their skin.

44.     On or about July 18, 2021, Defendant USAFA Superintendent Lieutenant General Richard M. Clark published and widely distributed a letter addressed to "Team USAFA" in which he stated in part:

> Our selection for this year's `One Book, One USAFA' program offers us an opportunity to continue our important dialogue on Diversity and Inclusion.  They Called Us Enemy is a graphic novel memoir by George Takei . . .. [that] focuses on

> Takei's childhood, and the experience of his family being forced from their home in California and into internment camps during World War II.
>
> Our investment in reading this graphic novel together will support our mission to develop leaders for our Nation who understand our history, speak fluently to current events, and can think critically about shaping the direction of our shared future. . .. I encourage all of our cadets, AOCs and AMTs, coaches, faculty, and staff to read this book and engage in the critical conversations it generates.

The author of They Called Us Enemy makes no attempt to remain politically neutral, ignores President Franklin Roosevelt's role in the establishing the internment camps and openly equates U.S. border security today with the World War II internment facilities. This misleading book denigrating America and undermining respect for the law was issued to all new freshman cadets on the first day of their arrival at the Air Force Academy, in June, 2021, and was the subject of lengthy laudatory speeches by AFA faculty addressed to the public and to AFA cadets required to attend an "Acceptance Day" parade at the Air Force Academy on August 6, 2021.   At this parade the Dean of Faculty at the Air Force Academy specifically promoted, lauded and advocated that cadets and the public read They Called Us Enemy. Yet, while in their efforts to promote the kind of unbalanced and misleading political propaganda contained in Takai's book, Defendant Clark and the Air Force Academy do so to the exclusion of all contrary viewpoints, sending a clear and unmistakable message that Air Force Academy cadets can either adopt this unilateral, monolithic ideology or suffer the consequences.  No small wonder, then, that  books such as Irresistible Revolution: Marxism's Goal of Conquest & the Unmaking of the American Military by USAFA graduate Lieutenant Colonel Matthew Lohmeier, and American Marxism by Mark R. Levin  are not to be found on any of Defendants' reading lists or in any of their so-called "reading rooms" Indeed, the decision to relieve Lieutenant Colonel Lohmeier of his command for having the moral courage to offer a view contrary to the woke ideology currently pervading the U.S. military could

not more pointedly illustrate the insidious viewpoint discrimination the BOV's have been made powerless to stop.

45.    During August 2020 through August 10, 2021, Stand Together Against Racism and Radicalism in the Services, Inc. ("STARRS") (www.starrs.us), a Texas nonprofit corporation educating about racism and radicalism in the military, or individuals, sent the Air Force Academy at least twelve FOIA requests for documents evidencing the nature and extent of some of the problems at the Air Force Academy set forth above. To date, the Air Force Academy has provided documents responsive to only one of those requests. Moreover, during the same period STARRS sent West Point at least two FOIA requests and the Naval Academy at least one FOIA request for similar information. Neither West Point nor the Naval Academy has provided any documents in response to any of those requests.  A summary of details concerning these fifteen FOIA requests is attached as Exhibit 8.

46.    The United States Congress created the Air Force Academy Board of Visitors and mandated its membership, duties and prerogatives.  For example, 10 U.S.C. § 9455(a) provides that a "Board of Visitors to the [Air Force] Academy is constituted annually" and how appointments to the AFA BOV are made.  *Id*.  By suspending the AFA BOV, the Defendants have unilaterally, arbitrarily and unlawfully rendered the AFA BOV and its members non-operational and completely ineffective, contrary to the express will of Congress in 10 U.S.C. § 9455.

47.    In addition, 10 U.S.C. § 9455(d) provides that:

> "The Board shall visit the Academy annually. With the approval of the Secretary of the Air Force, the Board or its members may make other visits to the Academy in connection with the duties of the Board or to consult with the Superintendent of the Academy. Board members shall have access to the Academy grounds and the cadets, faculty, staff, and other personnel of the Academy for the purposes of the duties of the Board."

By suspending the AFA BOV, the Defendants have prevented the USAFA BOV from meeting at the Academy and have prevented the USAFA BOV and all USAFA BOV members from having access to the Academy grounds and cadets, faculty, staff, and other personnel of the Academy.

48.     In addition, 10 U.S.C. § 9455(e)(1) mandates that the Board "shall inquire into the morale, discipline, and social climate, the curriculum, instruction, physical equipment, fiscal affairs, academic methods, and other matters relating to the Academy that the Board decides to consider." *Id.* With regard to those matters, Congress mandated that "the Board shall recommend appropriate action."  10 U.S.C. § 9455(e)(3).  By suspending the USAFA BOV, the Defendants have prevented the USAFA BOV from inquiring into any of the specific areas listed above, including in particular the morale, social climate, curriculum, instruction and academic matters relating to the Academy.

49.     Moreover, to assist the USAFA BOV to perform its Congressionally mandated oversight functions, 10 U.S.C. § 9455(e)(2) requires that the "Secretary of the Air Force and the Superintendent of the Academy shall provide the Board candid and complete disclosure, consistent with applicable laws concerning disclosure of information, with respect to institutional problems." *Id.* The Secretary of the Air Force and the Superintendent of the Air Force Academy have completely failed to provide the USAFA BOV candid and complete disclosures regarding institutional problems at the Air Force Academy.

50.     Congress also mandated that the USAFA BOV "prepare a semiannual report containing its views and recommendations pertaining to the Academy, based on its meeting since the last such report and any other considerations it determines relevant," and that "[e]ach such report shall be submitted concurrently to the Secretary of Defense, through the Secretary of the Air Force, and to the Committee on Armed Services of the Senate and the Committee on Armed

Services of the House of Representatives." 10 U.S.C. § 9455(f).  By suspending the USAFA BOV, the Defendants have prevented the USAFA BOV from meeting and from preparing and submitting reports containing its views and recommendations pertaining to the Air Force Academy, in violation of 10 U.S.C. § 9455(f), and from even having views or recommendations, contrary to 10 U.S.C. § 9455.

51.    The Charter for the Board of Visitors of the Air Force Academy, issued pursuant the predecessor statute to 10 U.S.C. § 9455 and its implementing regulations, repeats many of the requirements of 10 U.S.C. § 9455 and provides additional mandates regarding the duties and prerogatives of the USAFA BOV.  This Charter is published on the official Air Force Academy Board of Visitors website as representing the official Charter of the USAFA BOV that officially is in effect. See https;//www.usafa.edu/about/bov.

52.    For example, Section 3 of the Charter provides that the USAFA BOV "shall provide independent advice and recommendations on matters relating to the U.S. Air Force Academy." Charter, USAFA BOV, Sect. 3. By suspending the USAFA BOV, the Defendants have prevented the USAFA BOV from providing this independent advice and recommendations as mandated.

53.    Further, Section 4 of the USAFA BOV Charter states:

Pursuant to 10 U.S.C. § 9455(e)(1) and (3),  the Board shall provide to the Secretary of Defense and the Deputy Secretary of Defense, through the Secretary of the Air Force, and to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives independent advice and recommendations on the morale, discipline, and social climate, the curriculum, instruction, physical equipment, fiscal affairs, academic methods, and other matters relating to the Academy that the Board decides to consider. The Board shall recommend appropriate action.

*Id.* By suspending the USAFA BOV, the Defendants have prevented the USAFA BOV from providing any of these "independent advice and recommendations" to any of the parties referenced above.

54.     In addition, Section 5 of the USAFA BOV Charter requires that the USAFA BOV "shall prepare a semiannual report containing its views and recommendations pertaining to the Academy" and that those reports be submitted to the Secretary of Defense, through the Secretary of the Air Force, and to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives.  *Id.*  By suspending the USAFA BOV, the Defendants have prevented the USAFA BOV from preparing and submitting any of the reports referenced above.

55.  In addition, Section 6 of the USAFA BOV Charter specifically requires that the "DoD, through the Department of the Air Force, shall provide the necessary support for the Board and shall ensure compliance with the requirements of the FACA [the Federal Advisory Committee Act, 5 U.S.C. Appendix, P.L. 92-463, 86 Stat. 770, as amended], the Government in the Sunshine Act of 1976 (5 U.S.C. § 552b, as amended) ("the Sunshine Act"), governing Federal statutes and regulations, and established DoD policies and procedures." *Id.*  The Defendants have utterly and deliberately failed to provide the necessary support for the USAFA BOV and to comply with the other requirements stated above.

56. In particular, Section 6 of the USAFA BOV Charter specifically requires that:

> Pursuant to 10 U.S.C. §§ 9455(d) and (e)(2), the Secretary of the Air Force, through the Superintendent of the Academy, shall ensure that the Board has access to the Academy grounds and the cadets, faculty, staff, and other personnel of the Academy for the purposes of the duties of the Board. The Secretary of the Air Force and the Superintendent of the Academy shall provide the Board candid and complete disclosure, consistent with applicable laws concerning disclosure of information, with respect to institutional problems.

*Id.*  By suspending the USAFA BOV, the Defendants have failed to ensure that the USAFA BOV has access to the Academy grounds and personnel and has failed to provide the USAFA BOV disclosures as required above.

57.     In addition, Section 9 of the USAFA BOV Charter specifically requires that "[p]ursuant to 10 U.S.C. § 9355(d), the Board should meet at least four times per year, with at least two of those meetings taking place at the Academy. Board meetings should last at least one full day.**"** *Id*. Upon information and belief, that provision is outdated because 10 U.S.C. § 9355(d) has been superseded by 10 U.S.C. § 9455(d), which provides in part that the "Board shall visit the Academy annually." By suspending the USAFA BOV, the Defendants have prevented the AFA BOV from amending or updating its Charter and from meeting, at or away from the Academy, in violation of U.S.C. § 9455(d).

58. Moreover, Section 10 of the USAFA BOV Charter states "<u>Duration</u>: The need for this Board is on a continuing basis . . .." *Id*.  By suspending the USAFA BOV, the Defendants have prevented the USAFA BOV from operating on a continuing basis or on any basis.

59. The Bylaws of the Board of Visitors of the Air Force Academy ("Bylaws"), issued pursuant to the predecessor statute to 10 U.S.C. § 9455, its implementing regulations and the USAFA BOV Charter, repeat many of the requirements of predecessor statute and thus 10 U.S.C. § 9455, and provide additional language mandating the duties and prerogatives of the USAFA BOV. These Bylaws are published on the official Air Force Academy Board of Visitors website as representing the Bylaws of the USAFA BOV that officially are in effect. See https;//www.usafa.edu/about/bov. If these Bylaws are outdated, it is because the Defendants have prevented the USAFA BOV from amending or updating its Bylaws by unlawfully suspending the USAFA BOV.

60.   These Bylaws identify the USAFA BOV as an "oversight board" and an "advisory board" charged with providing "independent advice and recommendations" regarding the Air Force Academy. <u>Bylaws</u>, Art. I. The Bylaws state that the "Board shall be responsible for advising

the Superintendent (and, in turn, the Chief of Staff, the Secretary of the Air Force and the Secretary of Defense) by making recommendations on significant matters relating to the Academy." *Id*. By suspending the USAFA BOV, the Defendants have prevented the USAFA BOV from providing any advice or recommendations to the Superintendent, the Chief of Staff, the Secretary of the Air Force or the Secretary of Defense.

61.     In addition, the Bylaws provide that the "Board may request, without restriction, information, facts, and briefings in support of its role to oversee operations of the Air Force Academy" and requires that "[t]he Secretary of the Air Force and the Superintendent of the Academy shall provide the Board candid and complete disclosure, consistent with applicable laws concerning disclosure of information, with respect to institutional problems." Bylaws, Art. I. By suspending the USAFA BOV, the Defendants have prevented the USAFA BOV from requesting or obtaining information, facts and briefings in support of its oversight role, and the Defendants have failed to provide required disclosures.

62.     The Bylaws also provide that the "Board is a working board and its members are expected to attend all meetings and to participate in the activities of the Board" and that "Board members have the duty to make constructive recommendations to ensure the mission of the Academy is appropriately met." Bylaws, Art. III, Section 3. By suspending the USAFA BOV, the Defendants have prevented the USAFA BOV members from being a "working board," from attending meetings and from participating in activities of the USAFA BOV, and from making constructive recommendations to ensure the mission of the Air Force Academy is appropriately met.

63.     The Bylaws also provide that:

> The Board should meet at least four times a year, with at least two of those meetings at the Academy. . .. The Board or its members may make other

visits to the Academy in connection with the duties of the Board. Board
meetings should last at least one full day. Board members shall have access
to the Academy grounds and the cadets, faculty, staff, and other personnel
of the Academy for the purposes of the duties of the Board.

Bylaws, Art. IV, Section 1. By suspending the USAFA BOV, the Defendants have prevented the
USAFA BOV from meeting, and all USAFA BOV members from visiting the Academy and
gaining access to the Academy grounds and cadets, faculty, staff and other personnel as stated
above.

64.     The Bylaws also provide that "[a]ny member of the Board may make special visits
to the United States Air Force Academy, in addition to those described herein, in connection with
the duties of the Board or to consult with the Superintendent." Bylaws, Art. IV, Section 3. By
suspending the USAFA BOV, the Defendants have prevented the members of the USAFA BOV
from visiting the Defendant United States Air Force Academy and from otherwise consulting with
the Defendant Superintendent of the Air Force Academy.

65.     The Bylaws also provide that "[m]embers of the public attending open meetings
and briefings of the Board may, upon approval by the Chair, be allowed to present questions from
the floor or speak to an issue under discussion by the Board" and that "[a]ny member of the public
shall also be permitted to file a written statement with the Board." Bylaws, Art. IV, Section 7. The
Bylaws provide other opportunities for members of the public to publicly express their views to
the USAFA BOV and to the public, and to record those views. Id. By suspending the USAFA
BOV, the Defendants have prevented members of the public from attending meetings of the
USAFA BOV and from presenting questions to or otherwise communicating with the USAFA
BOV as provided above.

66.     The Bylaws also provide that "any member may exercise the right to have views
incorporated verbatim in the minutes" of USAFA BOV meetings.  Bylaws, Art. IV, Section 10.

23

By suspending the USAFA BOV, the Defendants have prevented members of the USAFA BOV from having their views incorporated verbatim in the minutes of USAFA BOV meetings, and the public, the Defendants and the Congress from having knowledge of those views.

67.    The Bylaws also provide that the "Boards shall prepare a semiannual report containing its views and recommendations pertaining to the Academy, based on its meetings since the last such report and any other considerations it determines relevant" and that "[e]ach such report shall be submitted concurrently to the Secretary of Defense, through the Secretary of the Air Force, and to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives." Bylaws, Art. IV, Section 11. The Bylaws also require that "[t]he Secretary and Chief of Staff of the Air Force, as well as the Superintendent of the Academy, will receive a copy of the approved reports." *Id.*  By suspending the USAFA BOV, the USAFA BOV has been prevented from complying with any of these requirements.

68.    The Bylaws also provide that:

> The United States Air Force Academy, without restriction, will provide to the Board information, briefings, and facts in preparation for meetings in support of its role to oversee operations of the United States Air Force Academy, and will provide Board members access to the Academy grounds and cadets, to include attending classes and meeting with cadets informally and privately. Also, the Superintendent of the Air Force Academy will ensure BoV members receive candid and complete disclosure of all institutional problems, to include cadet and faculty surveys, and any information related to the culture and climate of the Academy.

Bylaws, Art. V, Section 1. The United States Air Force Academy has utterly and deliberately failed to comply with any of the requirements quoted above.  Indeed, the Superintendent of the Air Force Academy has specifically refused in writing to answer Plaintiff Stirrup's questions as a member of the USAFA BOV for the stated reason that he could not do so because the USAFA BOV is suspended.

69.     The Bylaws also provide that the "bylaws will be reviewed annually" and that "[a]mendments or changes to the bylaws of the Board of Visitors may be suggested to the Board Chair, in writing, by any member as an Agenda item at a scheduled Board meeting." Bylaws, Art. V, Section 3.  By suspending the USAFA BOV, Plaintiff Stirrup and other members of the AFA BOV have been prevented from reviewing the bylaws and from suggesting amendments or changes to the bylaws, in violation of the above.

## B.  UNITED STATES MILITARY ACADEMY

70.     On April 16, 2021, the United Sates Military Academy issued a press release entitled "West Point Concludes Honor Code Investigations, Discontinues Willful Admission Process." A copy of that press release is attached as Exhibit 9. In that press release, West Point announced that 61 cadets had been found guilty of and were being punished for violating the Cadet Honor Code, and that West Point was abolishing its "willful admission process" which, "in place since 2015, had not met its intended purpose." The USMA BOV has not reviewed and has been prevented from investigating, reviewing and making recommendations regarding the handling of these Honor Code violations and changes in the West Point Honor System because the USMA BOV has been suspended.

71.     During and perhaps previous to the year 2021, West Point has taught cadets a controversial course entitled "Politics of Race, Gender, and Sexuality Mini-Elective," described in part in Exhibits 10 and 11 attached.  The USMA BOV has not reviewed and has been prevented from investigating, reviewing and making recommendations regarding this course in the West Point curriculum because the WP BOV has been suspended.

72.     On April 8, 2021, Congressman Michael Waltz sent to Defendant West Point Superintendent Lieutenant General Darryl A. Williams a letter, attached as Exhibit 12, raising

"serious concerns about the U.S. Army's introduction of elements of critical race theory into cadet instruction" and stating "I am alarmed that this doctrine that focuses our future leaders on race in ways that will be detrimental to unit cohesion, destructive to morale, and strain the readiness of our armed forces." *Id*. In this letter Congressman Waltz complained that one mandatory seminar for cadets, included a workshop on "Understanding Systemic Racism" and featured a presentation by Dr. Carol Anderson of Emory University on "Understanding Whiteness and White Rage." Rep. Waltz noted that Anderson "is a controversial, partisan academic, who has made no secret where she stands politically" and has written that the "trigger for white rage, inevitably, is black advancement. It is not the mere presence of black people that is the problem: rather, it is blackness with ambition, drive, purpose, aspirations." According to reports received by Congressman Waltz, the entire cadet corps was required to attend a stadium assembly that included testimony from a fellow cadet about her "white privilege" and how she "felt guilty for the advantages of her race." The USMA BOV has not reviewed and has been prevented from investigating, reviewing and making recommendations regarding critical race theory teachings in the West Point curriculum because the USMA BOV has been suspended.

73.     On June 9, 2021, Congressman Michael Waltz publicly demanded that United States Military Academy at West Point stop teaching cadets critical race theory, calling those teachings "divisive," "destructive," and "unacceptable" for the future leaders of the U.S. military. See   https://www.foxnews.com/politics/gop-waltz-west-point-critical-race-theory-cadets;   The USMA Board of Visitors has not reviewed and has been prevented from investigating, reviewing and making recommendations regarding critical race theory teachings in the West Point curriculum because the USMA BOV has been suspended.

74.     Plaintiffs John Doe # 3 and Jane Roe #4 and other cadets at West Point and their parents object that cadets, including John Doe # 3 and Jane Roe #4, illegally have been coerced to take COVID-19 vaccinations and have been punished in numerous ways for failing to do so. Cadets and their parents object to cadets taking COVID-19 vaccinations involuntarily because (a) they are experimental, unapproved, risky and unlicensed; (b) taking them is optional and not mandated; and (c) "[T]he United States cannot demand that members of the armed forces also serve as guinea pigs for experimental drugs." *Doe #1 vs Rumsfield*, 297 F. Supp. 119 (2003). Moreover, cadets and their parents object that (a) there effectively is no medical benefit to cadets taking the COVID-19 vaccine, including in particular cadets who already are immune from COVID-19 by virtue of previous exposure, because the risk of serious complications or death from COVID-19 is 0.002% or less, and because COVID-19 does not kill the young and healthy and (b) there are grave risks of developing myocarditis and other conditions related to heart inflammation, and grave risks of death, by taking the COVID-19 vaccine, especially for young people, as confirmed by the U.S. Centers for Disease Control and as indicated by Vaccine Adverse Event Reporting System  data showing that as of May 28, 2021, 4,561 deaths occurred in the United States correlated in time to a COVID vaccine, which is more than all 70 other vaccines over the past 30 years combined.  In addition, (a) the World Health Organization has recommended that young people not take the vaccine due to its risks; (b) on June 22, 2021 Professor Peter A. McCullough, MD, MPH, Professor of Medicine, Baylor University Medical Center, stated on national television that 20% of children who take the COVID vaccine development myocarditis, sometimes resulting in death, and that anyone under the age of thirty should be prohibited from taking the COVID vaccine because of its side effect risks; and (c) on June 24, 2021, during six (54-60) full minutes on a separate national broadcast, evidence was presented, supplementing a

similar program the previous day, by medical experts stating that people under age thirty should not take the COVID vaccine due to its side effect risks. The USMA BOV has not reviewed or recommended and has been prevented from investigating, reviewing and making recommendations regarding the manner in which West Point has been treating and will treat cadets who exercise their right to not take the COVID vaccine because the USMA BOV has been suspended.

75.     On June 17, 2021, three West Point cadet parents appeared on national television complaining about coercive, punitive and retaliatory actions having been taken by West Point officials against their cadet children and against other West Point cadets. See Exhibit 13.  Those parents and other parents of West Point cadets have complained that West Point cadets, including their children, have been denied summer leave, segregated, verbally berated, shamed, harassed, threatened, abused, targeted, isolated, lied to and otherwise punished to coerce them into forfeiting their right to not take the COVID-19 vaccine and to retaliate against them for exercising their right to not take the vaccine. The West Point Board of Visitors has not reviewed or recommended and has been prevented from investigating, reviewing and making recommendations regarding the manner in which West Point has been treating and will treat cadets who elect not to take the COVID vaccine because the USMA BOV has been suspended.

76.     The United States Congress created the United States Military Academy Board of Visitors and mandated its membership, duties and prerogatives.  For example, 10 U.S.C. § 7455(a) provides that a "Board of Visitors to the [Military] Academy is constituted annually" and describes how appointments to the USMA BOV are made.  *Id*.  By suspending the USMA BOV, the Defendants have rendered the USMA BOV and its members non-operational and completely ineffective, contrary to the express will of Congress, as expressed in 10 U.S.C. § 7455.

77.     10 U.S.C. § 7455(d) provides that:

> The Board shall visit the Academy annually. With the approval of the Secretary of the Army, the Board or its members may make other visits to the Academy in connection with the duties of the Board or to consult with the Superintendent of the Academy.

By suspending the USMA BOV, the Defendants have prevented the USMA BOV from meeting at West point and have prevented the USMA BOV and all USMA BOV members from having access to West Point's grounds and cadets, faculty, staff, and other personnel.

78.     In addition, 10 U.S.C. § 7455(e) mandates that the USMA BOV "shall inquire into the morale and discipline, the curriculum, instruction, physical equipment, fiscal affairs, academic methods, and other matters relating to the [Military] Academy that the Board decides to consider." *Id.* By suspending the USMA BOV, the Defendants have prevented the USMA BOV from inquiring into any of the specific areas listed above, including in particular the morale, curriculum, instruction and academic methods relating to West Point.

79.     Congress also mandated that "[w]ithin 60 days after its annual visit, the [USMA BOV] shall submit a written report to the President of its action, and of its views and recommendations pertaining to the [Military] Academy." 10 U.S.C. § 7455(f).  Further, Congress mandated that "[a]ny report of a visit, other than the annual visit, shall, if approved by a majority of the members of the [USMA BOV], be submitted to the President within 60 days after the approval." *Id.* By suspending the USMA BOV, the Defendants have prevented the USMA BOV from meeting and from preparing and submitting reports containing its views and recommendations pertaining to West Point, in violation of 10 U.S.C. § 7455(f), and from even conducting inquiries or investigations or forming or having views or recommendations, contrary to 10 U.S.C. § 7455.

80.     The Charter for the USMA BOV, issued pursuant to 10 U.S.C. § 7455 and its implementing regulations, repeats many of the requirements of 10 U.S.C. § 7455 and provides additional mandates regarding the duties and prerogatives of the USMA BOV.

81.     For example, Section 3 of the Charter provides that the USMA BOV "provides independent advice and recommendations on matters relating to the United States Military Academy."   Charter, WP BOV, Sect. 3. By suspending the USMA BOV, the Defendants have prevented the USMA BOV from providing this independent advice and recommendations as mandated.

82.     Further, Section 4 of the USMA BOV Charter states:

> The [USMA BOV], pursuant to 10 U.S.C. § 7455(e), provides independent advice and recommendations on the morale and discipline, the curriculum, instruction, physical equipment, fiscal affairs, academic methods, and any other matters relating to the Academy that the Board decides to consider.

*Id.* By suspending the USMA BOV, the Defendants have prevented the USMA BOV from providing any "independent advice and recommendations" about West Point.

83.     Section 4 of the USMA BOV Charter requires that the USMA BOV "shall visit the Military Academy annually" and that:

> The Board shall submit a written report to the President of its action within 60 days after its annual visit to the Academy, to include the [USMA BOV's] views and recommendations pertaining to the Academy. Any report of a visit, other than the annual visit, shall, if approved by a majority of the members of the [USMA BOV], be submitted to the President with 60 days after the approval.  *Id.*

84. In addition, Section 6 of the USMA BOV Charter specifically requires that the "DoD, through the Department of the Army and the Superintendent of the [Military] Academy, provides the necessary support for the Board and ensures compliance with the requirements of the FACA [the Federal Advisory Committee Act, 5 U.S.C. Appendix, P.L. 92-463, 86 Stat. 770, as amended],

the Government in the Sunshine Act (the Sunshine Act") (5 U.S.C. § 552b), governing Federal

statutes and regulations, and DoD policies and procedures." *Id.*  The Defendants have utterly and

deliberately failed to provide the necessary support for the USMA BOV and to comply with the

other requirements stated above.

85.  In addition, Section 9 of the USMA BOV Charter states that the "estimated number of

[USMA BOV] meetings is two per year."  *Id*. By suspending the USMA BOV, the Defendants

have prevented the USMA BOV from visiting West Point, from holding any meeting about West

Point and from filing any reports or recommendations about West Point, including as stated above.

86.  In addition, Section 10 of the USMA BOV Charter states "<u>Duration</u>: The need for the

Board is on a continuing basis; . . ."  *Id.*  By suspending the USMA BOV, the Defendants have

prevented the USMA BOV from operating on a continuing basis or on any basis.

87.  Section 11 of the USMA BOV Charter states "<u>Termination</u>: The [WP BOV] will

terminate upon rescission of 10 U.S. C. § 7455." By suspending the USMA BOV, the Defendants

in effect have terminated it even though 10 U.S. C. § 7455 has not been rescinded.

88.  Section 12 of the USMA BOV Charter states that "[e]ach [USMA BOV] member

is appointed to exercise his or her own best judgment on behalf of the DoD, without representing

any particular point of view, and to discuss and deliberate in a manner that is free from conflicts

of interest."  *Id*. By suspending the USMA BOV, the Defendants have prevented the members of

the USMA BOV from exercising judgment on behalf of the DoD and from discussing and

deliberating about West Point.

## C.  UNITED STATES NAVAL ACADEMY

89.  The Naval Academy's wholesale adoption of critical race theory, its efforts to

indoctrinate its tenets into the Brigade of Midshipmen, and its discrimination against midshipmen

and others who continue to espouse alternative viewpoints, have been the subject of widespread media and alumni attention for more than a year.

90.     To cite just a few of many examples:  A midshipman encouraging participation in the Academy's Racial Injustice and Diversity ("RIDE") training embeds a quote by Angela Davis, an avowed Marxist, a convicted domestic terrorist, and a former vice-presidential candidate of the Communist Party of the United States.  Midshipmen sport "BLM" fists and patches on their doors, on rugs in their rooms, and elsewhere despite regulations prohibiting such displays.  A black Marine Captain and company officer arrives at his company's noon meal formation wearing a black tee shirt quoting Malcom X: "Try Me."  At the 2020 Army-Navy game, while the Army football team stands at attention in the open-air walkway from their locker room to the field for the playing of the National Anthem, the Navy football team waits inside in its own locker room.

91.     The former Commandant of Midshipmen lectured the Brigade on the fundamental tenets of CRT and, in a "fireside" video chat, let the Brigade know that he would be spending the weekend reading Robin DiAngelo's *White Fragility*, a CRT manifesto.  That officer has since been promoted to rear admiral, a less than surprising development given that the Chief of Naval Operations includes Ibram X. Kendi's *How to Be an Anti-Racist*, another CRT manifesto, on his own reading list.

92.     Among the many pernicious manifestations of this CRT indoctrination is the extent to which the Naval Academy Command tolerates the weaponization of social media.  In the ostensible name of "diversity and inclusion," and anti-racist "dialogue," midshipmen have been permitted to post social media that can only be described as vulgar, nihilistic, racist, and seditious.  Such posts openly criticized the last President, advocated violence against police officers, mocked white people and other non-black people of color, cheered the destruction and desecration of

statues and other historic landmarks, and called for widespread rioting and destruction in major cities across the United States.

93.     The backlash among many members of the Naval Academy alumni was marked by outrage and disgust over such developments.  Many such members made clear to Defendant Superintendent of the Naval Academy Vice Admiral Sean S. Buck that they would not donate another penny to the Naval Academy or its Foundation until the CRT indoctrination ceased.

94.     The USNA BOV has been unable to review or oversee the continued indoctrination of the Brigade of Midshipmen into the tenets of CRT because Defendants have deliberately and illegally prevented them from doing so.

95.     In late December 2020, the Naval Academy announced that it had given more than 600 members of the Class of 2023 a grade of "Incomplete" in their Physics II course in light of "inconsistencies" in their final exams, taken on December 7, 2020.  Eventually, more than 100 of those midshipmen would be suspected of cheating on the exam by visiting websites other than the website through which the exam was being administered.  Such suspicions were presented to the midshipmen in question by investigators who claimed that the results of an analysis of the website activity over a Naval Academy server associated with their particular, unique Internet Service Provider address constituted definitive proof that the midshipmen in question had actively visited other websites, had obtained problem-solving information from those websites, and had used the information to cheat on the final when, in fact, the "definitive proof" was, in some cases, highly misleading and susceptible to attack upon a review of the actual log date underlying such proof.

96.     The public relations stakes were sufficiently high that any midshipman who attempted to challenge the evidence was harassed, intimidated, and branded a liar and a cheat.

97.     The USNA BOV has been unable to review, oversee or make recommendations regarding this cheating scandal or how it was handled because Defendants have deliberately and illegally prevented them from doing so.

98.     This "process" was emblematic of the sham that is the Naval Academy's Administrative Conduct and Performance System, an administrative process so lacking in due process as to shame a third-world court system.  Midshipmen are repeatedly over-charged with a multitude of alleged offenses, the elements and severity levels of which often bear little relationship to the conduct itself.  Midshipmen are given 24 hours to review the "evidence," prepare their defense, and appear at an "adjudication" before the Deputy Commandant of Midshipmen, an adjudication that is nothing more than an exercise in confirmation bias and which inevitably leads to forwarding for disenrollment notwithstanding the facts or the law.

99.     Those midshipmen who choose to defend themselves, either *pro se*, or with the assistance of counsel, are vilified for doing so, are accused of failing to "own it," are told that the retention of counsel simply proves their guilt and their bad character, and that if they have any hope of avoiding disenrollment, they will fire their attorneys, stop defending themselves, and confess their crimes.  Many of those who do so are disenrolled anyway.

100.    Midshipmen found not to be in violation of the Honor Concept of Midshipmen, or who are retained in the wake of a major conduct offense, spend the rest of their tenure as midshipmen with targets on their backs, watched like hawks by vindictive members of their chains of command who make it their personal mission in life to see to it that the next mistake will be their last.

101.    The USNA BOV has been unable to review or oversee these arbitrary and capricious actions and deprivations of due process because Defendants have deliberately and illegally prevented them from doing so.

102.    The Naval Academy's response to the COVID-19 pandemic was and continues to be a draconian disaster.  Desperate to demonstrate to the public and to the Congress that the Academy's COVID-19 protocols were working, the Defendant Superintendent and his subordinate commanders locked down the Brigade and cracked down on alleged COVID violators as if they were criminals, meting out grossly disproportionate punishments for a failure to wear a mask or to assemble in an outdoor area less than six feet apart.  For an extended period of time, midshipmen were not allowed to attend religious services in person, an unnecessary and unjustified deprivation of religious freedom guaranteed by the First Amendment.

103.    Those midshipmen who, for religious or other reasons, have declined to be given the COVID-19 vaccine have been precluded from participating in summer training in the Fleet, despite the fact that a significant percentage of unvaccinated sailors and Marines are at sea or are forward deployed around the world.  They have also been advised that they cannot participate in varsity sports.

104.    The USNA BOV has been unable to review or oversee the Naval Academy's handling of COVID-19 policies and protocols because Defendants have deliberately and illegally prevented them from doing so.

105.    The United States Congress created the United States Naval Academy Board of Visitors and mandated its membership, duties and prerogatives.  For example, 10 U.S.C. § 8468(a) provides that a "Board of Visitors to the [Naval] Academy is constituted annually" and how appointments to the USNA BOV are made.  *Id.*  By suspending the USNA BOV, the Defendants

have rendered the USNA BOV and its members non-operational and completely ineffective, contrary to the express will of Congress, as expressed in 10 U.S.C. § 8468.

106. In addition, 10 U.S.C. § 8468(d) provides that:

> The Board shall visit the Academy annually. With the approval of the Secretary of the Navy, the Board or its members may make other visits to the Academy in connection with the duties of the Board or to consult with the Superintendent of the Academy.

By suspending the USNA BOV, the Defendants have prevented the USNA BOV from visiting the Academy.

107. In addition, 10 U.S.C. § 8468(e) mandates that the USNA BOV "shall inquire into the state of morale and discipline, the curriculum, instruction, physical equipment, fiscal affairs, academic methods, and other matters relating to the Academy that the Board decides to consider." *Id.* By suspending the NA BOV, the Defendants have prevented the USNA BOV from inquiring into any of the specific areas listed above, including in particular the morale, curriculum, instruction and academic methods relating to the Naval Academy.

108. Congress also mandated that "[w]ithin 60 days after its annual visit, the [USNA BOV] shall submit a written report to the President of its action, and of its views and recommendations pertaining to the [Naval] Academy." 10 U.S.C. § 8468(f). Further, Congress mandated that "[a]ny report of a visit, other than the annual visit, shall, if approved by a majority of the members of the [USNA BOV], be submitted to the President within 60 days after the approval." *Id.* By suspending the USNA BOV, the Defendants have prevented the USNA BOV from meeting and from preparing and submitting reports containing its views and recommendations pertaining to the Naval Academy, in violation of 10 U.S.C. § 8468(f), and from even conducting inquiries or investigations or forming or having views or recommendations, contrary to 10 U.S.C. § 8468.

109.    The Charter for the Board of Visitors of the Naval Academy, issued pursuant to 10

U.S.C. § 8468 and its implementing regulations, repeats many of the requirements of 10 U.S.C. §

8468 and provides additional mandates regarding the duties and prerogatives of the USNA BOV.

110.    For example, Section 3 of the Charter provides that the USNA BOV "shall provide

independent advice and recommendations on matters relating to the United States Naval

Academy."   Charter, USNA BOV, Sect. 3. By suspending the NA BOV, the Defendants have

prevented the USNA BOV from providing this independent advice and recommendations as

mandated.

111.    Further, Section 4 of the NA BOV Charter states:

> The [USNA BOV], pursuant to 10 U.S.C. § 8468(e), provides independent advice
> and recommendations on the morale and discipline, the curriculum, instruction,
> physical equipment, fiscal affairs, academic methods, and any other matters
> relating to the Academy that the Board decides to consider.

*Id.*  By suspending the USNA BOV, the Defendants have prevented the USNA BOV from

providing any "independent advice and recommendations" about the Naval Academy.

112.    Section 4 of the USNA BOV Charter requires that the USNA BOV "shall

visit the Academy annually" and that:

> Pursuant to 10 U.S.C. § 8468(f), the Board shall submit a written report to
> the President of its action within 60 days after its annual visit to the
> Academy, to include the [USNA BOV's] views and recommendations
> pertaining to the Academy. Any report of a visit, other than the annual visit,
> shall, if approved by a majority of the members of the [USNA BOV], be
> submitted to the President with 60 days after the approval. *Id.*

113.    In addition, Section 6 of the USNA BOV Charter specifically requires that:

> The DoD, through the Department of the Navy and the Superintendent of
> the Academy, provides the necessary support for the Board and ensures
> compliance with the requirements of the FACA [the Federal Advisory
> Committee Act, 5 U.S.C. Appendix, P.L. 92-463, 86 Stat. 770, as amended],
> the Government in the Sunshine Act (the "Sunshine Act") (5 U.S.C. §

552b), governing federal statutes and regulations, and DoD policies and procedures.

*Id.* The Defendants have utterly and deliberately failed to provide the necessary support for the USNA BOV and to comply with the other requirements stated above.

114. In addition, Section 9 of the NA BOV Charter states that the "estimated number of [USNA BOV] meetings is two per year." *Id*. By suspending the USNA BOV, the Defendants have prevented the USNA BOV from visiting the Naval Academy, from holding any meeting about the Naval Academy and from forming or filing any reports or recommendations about the Naval Academy, including as stated above.

115.  In addition, Section 10 of the USNA BOV Charter states "Duration: The need for the Board is on a continuing basis; . . ." *Id.*  By suspending the USNA BOV, the Defendants have prevented the NA BOV from operating on a continuing basis or on any basis.

116.  Section 11 of the USNA BOV Charter states "Termination: The [USNA BOV] shall terminate upon rescission of 10 U. S. C. § 8468." By suspending the USNA BOV, the Defendants in effect have terminated it even though 10 U. S. C. § 8468 has not been rescinded.

117.  Section 12 of the USNA BOV Charter states that "[e]ach [USNA BOV] member is appointed to exercise his or her own best judgment on behalf of the DoD, without representing any particular point of view, and to discuss and deliberate in a manner that is free from conflicts of interest." *Id*. By suspending the USNA BOV, the Defendants have prevented the members of the USNA BOV from exercising judgment on behalf of the DoD and from discussing and deliberating about the Naval Academy.

## COUNT ONE
### (Violation of the Administrative Procedure Act)

118.  Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

119.    Defendants' actions constitute numerous, material violations of federal statutes and the DoD's own regulations governing the appointment to, and functioning of, the USAFA BOV, the USMA BOV and the USNA BOV.

120.    Defendants' illegal suspensions of the functioning of the USAFA BOV, the USMA BOV and the USNA BOV constitute final agency actions that violate the APA because they are arbitrary and capricious, abuses of discretion, not in accordance with law, and contrary to Articles I and II (including, but not limited to Article II, Section 3), and the First Amendment and the Due Process provisions of the Fifth Amendment to, the U.S. Constitution.

121.    This Court has the authority to review these actions under 5 U.S.C. § 702 and to enjoin and overturn them in accordance with 5 U.S.C. § 706(2)(A) and (B).

122.    The agency violations and actions at issue here are final because the harm to the Plaintiffs caused by these violations and actions is immediate, continuing, and irreparable.  Other than the declaratory and injunctive relief requested, there exists no adequate remedy at law.

**COUNT TWO**
**(Viewpoint Discrimination in Violation of the First Amendment to the U.S. Constitution)**

123.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

124.    Government action that targets speech based on its content is presumptively unconstitutional and is justified only if the government demonstrates that it is narrowly tailored to serve a compelling government interest.  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Defendants could not possibly make that showing here.

125.    "When the government targets not subject matter but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant.  Viewpoint discrimination is thus an egregious form of content discrimination.  The government must abstain from regulating speech when the specific motivating ideology or the opinion or

perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rectors and Visitors of the University of Virginia,* 515 U.S. 819, 829 (1995).

126.    Defendants' wrongful and deliberate suspensions of the constitutionally-critical oversight and advisory functions of the USAFA BOV, the USMA BOV and the USNA BOV are intended in part to prevent, and has the effect of preventing, the USAFA BOV, the USMA BOV and the USNA BOV from questioning, let alone providing an alternative view to, the indoctrination of CRT at the Air Force Academy, West Point and the Naval Academy.  By their actions, Defendants intended to chill, have chilled, and continue to chill, the free speech rights of the Plaintiffs specifically and of the USAFA BOV, the USMA BOV and the USNA BOV generally.

## COUNT THREE
### (Violation of the Separation of Powers Doctrine, Art. I and II of the U.S. Constitution)

127.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

128.    The oversight and investigative functions of the USAFA BOV, the USMA BOV and the USNA BOV are, like all such functions of the military service academies of the United States generally, a delegated Congressional oversight function derived from Article I of the U.S. Constitution.

129.    Congress never intended for a separate branch of the federal government, the Executive Branch, to have any power or authority to control, influence, or suspend the independent oversight and investigative functions of the USAFA BOV, the USMA BOV or the USNA BOV and did not grant to Defendants any statutory authority to do so.

130.    Defendants' suspensions of the USAFA BOV, the USMA BOV and the USNA BOV and their Congressionally-mandated and delegated functions violate Article I, Section 8, Clause 14 of the U.S. Constitution, which provides that "[The Congress shall have the Power . . .]

To make Rules for the Government and Regulation of the land and naval Forces." *Id*.  *See Youngstown Sheet & Tube v. Sawyer*, 343 U.S. 579, 587-589 (1952).

131.    Defendants' suspensions of the USAFA BOV, the USMA BOV and the USNA BOV and their Congressionally-mandated and delegated functions violate Articles I and II of the U.S. Constitution and the Constitutional Separation of Powers Doctrine.

## COUNT FOUR
### (Deprivation of the Right to Petition the Government for Redress of Grievances in Violation of the First Amendment to the U.S. Constitution)

132.    Plaintiffs reallege, adopt and incorporate by reference the foregoing paragraphs as though fully set forth herein.

133.    Members of the USAFA BOV, the USMA BOV and the USNA BOV have the statutory duty, authority and responsibility to report, as stated above, to the President, the Secretary of Defense, the Secretary of the Air Force, the Secretary of the Army, the Secretary of the Navy and specific Congressional committees on any recommendations, information, abuses, misconduct, or any other pattern or practice that affects the morale, discipline, and social climate, the curriculum, instruction, physical equipment, fiscal affairs, academic methods, and other matters relating to the Academy." See 10 U.S.C. § 7455(e); 10 U.S.C. § 8468(e); 10 U.S.C. § 9455(e)(1).

134.    Air Force Academy cadets, West Point cadets, Naval Academy midshipmen, their parents, academy graduates, active duty and retired military officers, members of Congress, members of the press and others have complained about existing conditions at the Air Force Academy, West Point and the Naval Academy.   Many of those complaints have been communicated to the Plaintiffs, directly and through third parties, but the Plaintiffs cannot investigate, report, make recommendations or otherwise petition to redress those grievances to the

Government through the Congressionally created USAFA BOV, USMA BOV or USNA BOV because they are suspended. Moreover, no member of the public can petition the USAFA BOV, the USMA BOV or the USNA BOV or any of its members for a redress of grievances because they are suspended.

135.    Defendants' suspension of the operations of the USAFA BOV, the USMA BOV and the USNA BOV and their refusal to provide access as required by statutes and other laws, constitute an immediate and irreparable harm to the First Amendment rights to "petition the Government for the redress of grievances" of the Plaintiffs, of the public, of the cadets and midshipmen and their parents, and of the faculty and staff at the Academies whose valid complaints about the academies the members of the USAFA BOV, USMA BOV and USNA BOV are duty-bound to investigate, review, make recommendations regarding and report.

**COUNT FIVE**
**(Violation of the Establishment and Free Exercise Clauses of the First Amendment to the U.S. Constitution and Violation of the Religious Freedom Restoration Act (RFRA))**

136.    Plaintiffs reallege, adopt and incorporate by reference the foregoing paragraphs as though fully set forth herein.

137.    Critical Race Theory and its woke counterparts have many of the attributes and indicia of a religion.  *See, e.g., EEOC v. United Health Programs*, 213 F.Supp.3d 377, 395-402 (E.D.N.Y 2016) (analyzing the attributes and indicia of a workplace conflict resolution system imposed on employees and concluding that the conflict resolution system was a religion).

138.    Defendants' embrace, adoption, espousal, and indoctrination of CRT and its woke counterparts on cadets and midshipmen, including Plaintiffs John Doe #1, John Doe #2, John Doe #3 and Jane Roe #4, at the Academies constitutes state-sponsored religion in violation of the Establishment Clause of the First Amendment.

139.    Defendants' disparate and discriminatory treatment of any cadet or midshipman, including Plaintiffs John Doe #1, John Doe #2, John Doe #3, and Jane Roe #4, for any such cadets or midshipman's refusal to accept the religious CRT and its woke counterparts-indoctrination at the hands of Defendants impedes the belief in and exercise of other religious tenets in violation of the Free Exercise Clause of the First Amendment and the RFRA. Any such disparate and discriminatory treatment is subject to strict scrutiny. *Adair v. England*, 183 F.Supp.2d 31, 50-52 (D.D.C. 2002).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court:

A.    Declare the suspension of the USAFA BOV to be in violation of 10 U.S.C. § 9455 and the above-referenced Charter and Bylaws of the USAFA BOV, the APA, Articles 1 and 2 of the U.S. Constitution, the First and Fifth Amendments to the U.S. Constitution, the RFRA, and of any other applicable laws;

B.    Declare the suspension of the USMA BOV to be in violation of 10 U.S.C. § 7455and the above-referenced Charter and Bylaws of the USMA BOV, the APA, Articles 1 and 2 of the U.S. Constitution, the First and Fifth Amendments to the U.S. Constitution, the RFRA and of any other applicable laws;

C.    Declare the suspension of the USNA BOV to be in violation of 10 U.S.C. § 8468 and the above-referenced Charter and any Bylaws of the USNA BOV, the APA, Articles 1 and 2 of the U.S. Constitution, the First and Fifth Amendments to the U.S. Constitution, the RFRA and of any other applicable laws;

D.    Enjoin Defendants and any other agency or employee acting for or on behalf

of Defendants from continuing to suspend or from suspending in the future the academy

Boards of Visitors, or otherwise from violating applicable laws regarding or interfering

with the operations of the USAFA BOV, the USMA BOV and the USNA BOV;

      E.     Award Plaintiff reasonable attorney's fees and costs; and

      F.     Grant such other relief as the Court may deem just and proper.


Dated: August 16, 2021            Respectfully submitted,


                          /s/  Jeffrey E. McFadden
                  Jeffrey E. McFadden
                  (DC. Bar No. 434234)
                  LAW OFFICES OF JEFFREY E. MCFADDEN, LLC
                  312 Prospect Bay Drive East
                  Grasonville, MD 21638
                  (410) 490-1163
                  jmcfadden@jmcfaddenlaw.com


                          /s/ Michael T. Rose

                  Michael T. Rose (S.C. Bar #4910)
                  (*pro hac vice* motion pending)
                  MIKE ROSE LAW FIRM, PC
                  409 Central Ave.
                  Summerville, SC 29483
                  Phone: 843-871-1821
                  mike@mikeroselawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2021, I caused a copy of this Plaintiffs'

Amended Complaint for Declaratory and Injunctive to be served through the Court's

CM/ECF system.


           /s/  Jeffrey E. McFadden    
            Jeffrey E. McFadden