## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEIDI STIRRUP et al.,<br><br>       *Plaintiffs*,<br><br>   v.<br><br>JOSEPH R. BIDEN, JR., *in his official capacity as President of the United States*, et al.,<br><br>       *Defendants*. | Civil Action No. 21-1893 (TJK) |

## <u>MEMORANDUM OPINION</u>

This case challenges the Biden administration's management of advisory committees to the United States service academies. Four Plaintiffs were presidential appointees to those committees that President Biden fired after taking office. All Plaintiffs dislike other decisions made by the President and the Defense Department. But Plaintiffs identify no concrete harms caused by the other decisions. And Plaintiffs have not stated claims based on the firings because the President has statutory authority to fire presidential appointees. So the Court will dismiss the case in part for lack of standing, and in part for failure to state a claim.

## I.      Background

Central to this dispute are the Boards of Visitors for the United States Military Academy, Naval Academy, and Air Force Academy.[1] Each of the Boards is authorized by statute and governed by levels of regulation, so the Court begins with a brief explanation of that framework. Because this case is at the pleading stage, the Court assumes Plaintiffs' allegations are true and draws all reasonable inferences in their favor.

---

[1] The Court refers to them as the Army Board, the Navy Board, and the Air Force Board.

### A.    Legal Background

Congress created each of the Boards in the 1950s.  Each has substantially similar structure and authority.  They each have fifteen members, six of whom are appointed by the President. 10 U.S.C. §§ 7455(a), 8468(a), 9455(a).  The remaining nine members come from Congress, whether by appointment or by membership on armed-services committees. *Id.* §§ 7455(a)(1)–(4), 8468(a)(1)–(4), 9455(a)(2)–(5).[2]  The Boards' duties are to visit their respective academies, evaluate their functioning, and produce recommendations and reports to Defense Department officials and the President.  *See id.* §§ 7455(d)–(f), 8468(d)–(f), 9455(d)–(f).

Presidentially appointed Board members "serve for three years."  10 U.S.C. §§ 7455(b), 8468(b), 9455(b)(1).  They may exceed that term, however, if the President has not yet designated a successor. *Id.* §§ 7455(b), 8468(b), 9455(b)(1).  Their terms are staggered so that two members' terms expire each year.  *See id.* §§ 7455(b), 8468(b).  With one exception that the Court will address momentarily, the statutes contain no explicit instructions about firing members.

Three differences between the Boards are relevant to Plaintiffs' arguments.  First, Air Force Board members who are not members of Congress can be removed by the Board's chair for failing "to attend two successive Board meetings" without good cause.  *Compare* 10 U.S.C. § 9455(c)(2) *with id.* §§ 7455(c), 8468(c).  Second, the Air Force Board prepares more reports and sends those to more recipients.  *Compare id.* § 9455(f) *with id.* §§ 7455(f), 8468(f).  Third, the provision providing for presidential appointment to the Air Force Board contains slightly different language, the thrust of which is that there is no explicit number of appointments that the "President shall

---

[2] One congressionally appointed member of the Air Force Board cannot be a "member of the House of Representatives."  10 U.S.C. § 9455(a)(3).

designate" in a given year.  *Compare id.* § 9455(b)(1) *with id.* §§ 7455(b), 8468(b).[3]

The Boards are subject to the Federal Advisory Committee Act ("FACA").  *See generally* 5 U.S.C. app. 2 §§ 4(a), 3(2) ("The term 'advisory committee' means any . . . board" that is "established by statute . . . .").  FACA establishes guidelines that require, among other things, the Boards' membership to be "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee," *id.* § 5(b)(2), and that their "advice and recommendations" will "be the result of [their] independent judgment," *id.* § 5(b)(3).  Regulations implementing FACA are codified at 41 C.F.R. § 102-3.5 *et seq.*

One of those regulations instructs agency heads to "assure that the advice or recommendations of advisory committees will not be inappropriately influenced by the appointing authority or by any special interest."  41 C.F.R. § 102-3.105(g).  Thus, the Secretary of Defense has issued an "[i]nstruction" that governs, among other committees, these Boards.  *See* ECF No. 42-6 at 1–2.  Moreover, each of the Boards has established its own charter.  *See* ECF Nos. 42-3–42-5.

### B.    Factual Background

Shortly after Defendant Austin, the Secretary of Defense, took office, he began a "zero-based review" of Defense Department advisory committees.  ECF No. 37 ("Compl.") at 63–64.  In other words, the review would require each committee to justify its existence from scratch.  During that review, Defendant Austin directed "the immediate suspension of all advisory committee operations."  *Id.* at 63.  That suspension included the Boards.  *See id.* at 65–72.

---

[3] Presidentially appointed Board members serve beyond their three-year terms if no successor has yet been designated.  *See* 10 U.S.C. §§ 7455(b), 8468(b), 9455(b)(1).  Because their terms are staggered, the Army and Navy Boards' statutes direct the President to "designate two persons each year to succeed the members whose terms expire that year."  *Id.* §§ 7455(b), 8468(b).  The Air Force Board's statute says simply that the President "shall designate persons each year" without specifying a number.  *Id.* § 9455(b)(1).

Four plaintiffs were then presidentially appointed Board members.[4]  They learned that Defendant Austin had suspended the Boards' operations a few days later by email from their Boards' designated federal officers.  *See* Compl. ¶ 53; *id.* at 57–60.[5]  That email explained that the Boards would "not hold any meetings . . . or otherwise undertake official board business" during the review.  *Id.* at 57.  It claimed, however, that Plaintiffs' "membership [would] not be impacted."  *Id.*

The review lasted over seven months.  *See* Compl. at 44–46.  During that time, none of the Boards met.  Compl. ¶¶ 56, 99–100, 117.  After the review, Defendant Austin authorized the Boards to "resume operations."  Compl. at 44–46.

But that resumption came with two changes relevant here.  First, President Biden demanded resignations from the four presidentially appointed plaintiffs.  *See* Compl. ¶¶ 61–62, 101, 116.  They refused, so he fired them.  Compl. ¶ 63.  Second, Defendant Austin explained that he would authorize, for the first time, subcommittees of the Boards.  Compl. at 44–46.  His announcement described subcommittees with membership "separate and distinct" from that of the Boards.  *Id.*  Plaintiffs have not alleged, however, that any such subcommittees have been created.

### C.    Procedural History

This case began when Plaintiff Heidi Stirrup sued to challenge the suspension before it was lifted—and before she had been fired.  *See generally* ECF No. 1.  Shortly after that, she amended her complaint to add more plaintiffs, including Plaintiff Mark Green and Plaintiff Ralph Norman.

---

[4] Plaintiffs Stirrup, Lengenfelder, and Gleason were presidential appointees to the Air Force Board. Compl. ¶¶ 14–16.  Plaintiff Spicer was a presidential appointee to the Navy Board.  Compl. ¶ 33. Plaintiff Green was a non-presidential appointee to the Army Board, and Plaintiff Norman was not a member of any Board.  *See* Compl. ¶¶ 31–32.

[5] Under FACA, each federal advisory committee must have a designated federal officer "to chair or attend each meeting." 5 U.S.C. app. 2 § 10(e).  That officer can adjourn any meeting, and the committee can hold no meeting "in the absence of that officer."  *Id.*

*See generally* ECF No. 5.  Those plaintiffs amended the complaint a second time to add Plaintiff Sean Spicer.  *See* ECF Nos. 11–12.  That group amended the complaint a third time, settling on the current six plaintiffs and asserting claims based on their removals from the Boards.  *See generally* ECF No. 16.

Defendants moved to dismiss, both for lack of subject-matter jurisdiction and for failure to state a claim.  *See generally* ECF No. 29.  Plaintiffs opposed that motion, ECF No. 31, but they also asked for leave to amend a fourth time, ECF No. 32.  Plaintiffs wished to add as defendants the designated federal officers for each of the Boards.  ECF No. 32 at 1.  The Court granted leave to amend, Minute Order of Apr. 7, 2022, and Plaintiffs' fourth-amended complaint became operative, ECF No. 37.  Defendants then reasserted their motion to dismiss.  ECF No. 39.

## II.    Legal Standards

Under Rule 12(b)(1), Plaintiffs have the burden to establish standing.  *Little v. Fenty*, 689 F. Supp. 2d 163, 166–67 (D.D.C. 2010).  That burden "grows heavier at each stage of the litigation."  *Osborn v. Visa Inc.*, 797 F.3d 1057, 1063 (D.C. Cir. 2015).  To survive a motion to dismiss, Plaintiffs need only allege a qualifying "injury resulting from [Defendants'] conduct."  *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  The Court must "assume the truth of all material factual allegations in the complaint and . . . grant[ ] [Plaintiffs] the benefit of all inferences that can be derived from the facts alleged."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation omitted).

Under Rule 12(b)(6), Plaintiffs' complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  A claim is plausible if "it contains factual allegations that, if proved, would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quotation omitted).

Again, the Court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in [Plaintiffs'] favor." *Id.* (quotation omitted).  But it must disregard "a legal conclusion couched as a factual allegation." *Cason v. NFL Players Ass'n*, 538 F. Supp. 3d 100, 109 (D.D.C. 2021) (quotation omitted).

## III.    Analysis

Plaintiffs bring four claims.  The first is for breach of contract.  Compl. ¶¶ 132–35.  The second is for violating the Administrative Procedure Act ("APA").  Compl. ¶¶ 136–40.  The third is for viewpoint discrimination.  Compl. ¶¶ 141–144.  The fourth and final claim is for offending "the Separation of Powers Doctrine," a claim given its most specific content[6] by reference to Article I, Section 8, Clause 14 of the Constitution.  *See* Compl. ¶¶ 145–50.[7]

They ask the Court for "three distinct forms of relief."  Compl. ¶ 3.  The first is a judgment declaring the "suspensions" illegal and enjoining Defendants from "further suspending or otherwise interfering with" the Boards.  Compl. ¶ 4.  The second is a similar judgment directed at the authorization of subcommittees.  Compl. ¶ 5.  The third is another similar judgment that would restore three plaintiffs to their positions on the Air Force Board.  Compl. ¶ 6.[8]

Plaintiffs do not have standing to seek the first two forms of relief because they identify no concrete harm that the relief would redress.  So the Court will dismiss their complaint for lack of

---

[6] There is no "separation of powers clause" in the Constitution, so a claim that a branch of government has exercised a power that belongs to another branch must be "evident from the Constitution's vesting of certain powers in certain bodies."  *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2205 (2020).

[7] "The Congress shall have Power . . . To make Rules for the Government and Regulation of the land and naval Forces."  U.S. Const. art. I, § 8, cl. 14.

[8] Plaintiffs seeking reinstatement to other Boards have elected to do so via other lawsuits.  *See* Compl. at 7 n.5.

subject-matter jurisdiction in those respects.  The Court has the power to order the third form of

relief, and it would substantially redress a concrete harm, so Plaintiffs have standing in that respect.

But they have not stated claims entitling them to that relief because the President has statutory

power to fire presidentially appointed Board members and because Plaintiffs have not stated the

elements of a breach-of-contract or First Amendment claim.  Thus, the Court will dismiss their

complaint in remaining part for failure to state a claim.

### A.    Plaintiffs Have Standing to Challenge Only Their Removals from the Boards

Before the Court can address Plaintiff's claims, it must ensure Plaintiffs have standing.  *See*

*Freedom Watch, Inc. v. McAleenan*, 442 F. Supp. 3d 180, 186 (D.D.C. 2020); *see also Steel Co.*

*v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  That is, it must ensure that Plaintiffs have

"clearly allege[d] facts demonstrating" they have "(1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a

favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alteration adopted).

The alleged injury must be particular to Plaintiffs; they may not raise a "generally available griev-

ance." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam).  And Plaintiffs "must demon-

strate standing for each claim that they press and for each form of relief that they seek." *TransUn-*

*ion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

At the outset of their response to Defendants' motion, Plaintiffs suggest that standing doc-

trine is somehow inapposite to this case.  ECF No. 42 at 20–21.  They express concern that "[t]he

rule of law cannot long survive if there is no redress from any quarter for deliberate breaches of

the President's constitutional and statutory duties."  *Id.* at 20.  "[S]omeone must have standing" to

sue, they say, or else the President will "be placed beyond the law." *Id.* (emphasis deleted).

Plaintiffs are mistaken.  Standing doctrine is not an exception to the rule of law—it is the

law.  The federal judicial power extends only to the cases and controversies listed in Article III.

In other words, the Constitution "limits federal courts to resolving concrete disputes between ad-verse parties." *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021). One court's inability to provide a desired form of relief in one case should not be conflated with an abdication of the responsibility to "say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). The President has "independent obligation to get the law right," *Common Cause v. Trump*, 506 F. Supp. 3d 39, 46 n.4 (D.D.C. 2020) (three-judge court), because the Constitution charges him to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3. Interbranch conflict is best avoided, *cf. Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2036 (2020), and so courts will not risk a contrary interpretation unless doing so is necessary to vindicate the rights of individuals concretely interested in the dispute more than the general public, *see Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471–76 (1982).

As for whether *someone* must—or does—have standing to seek the relief Plaintiffs request, the Court cannot say. "[A] federal court cannot adjudicate the rights of [those] who are not parties before it." *Tardan v. Cal. Oil Co.*, 323 F.2d 717, 722 (5th Cir. 1963). Plaintiffs here, however, have standing only to contest their own removals.

### 1. Plaintiffs Have Not Alleged Facts Implying that Another Suspension of the Boards is Certainly Impending

Plaintiffs ask the Court to declare the Boards' "suspensions" during the zero-based review illegal and to enjoin Defendants from "further suspending or otherwise interfering with" the Boards. Compl. ¶ 4. For standing purpose, those requests are indistinct. Federal courts do not have independent jurisdiction to render declaratory judgments; those require the same showing to overcome "Article III's case-or-controversy requirement" as "every other type of remedy." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). Plaintiffs seek prospective relief, so they must allege "ongoing or imminent future injury." *Silver v. IRS*, 569 F. Supp. 3d 5, 9 (D.D.C. 2021).

Defendants point out that the Boards' suspension has ended.  ECF No. 39 at 48.  So, they say, any injuries "occurred in the past."  *Id.*  And "past wrongs do not in themselves amount to . . . real and immediate threat of injury necessary to make out a case or controversy."  *Id.* at 49 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)).  Alternatively, they assert that the dispute is now moot for similar reasons.  *Id.* at 50–53.[9]

Plaintiffs say the dispute is not moot because it falls under the mootness exception called "capable of repetition, yet evading review."  ECF No. 42 at 48–49.  This issue is "sure to occur in future cases," they explain.  *Id.* at 49.  They also point to their request for a declaratory judgment, which they characterize as "live."  *Id.* at 48.

Plaintiffs' framing of the issue effectively concedes that they lack standing.  Anyway, the Court agrees with Defendants.  Harms that have yet to materialize are cognizable only when the "threatened injury" is "certainly impending," rather than merely "possible."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotations and emphasis omitted).  Based solely on the prior suspension, Plaintiffs surmise "what is now shown to be a real and present danger that, at any time, Defendants . . . will again illegally suspend, terminate or dilute the operations of the [Boards]."  Compl. ¶ 144.  That is a prototypical "threadbare recital[ ] of [an] element[ ] of standing, supported by mere conclusory statements."  *Kareem v. Haspel*, 986 F.3d 859, 865–66 (D.C. Cir. 2021) (quotation omitted and alterations adopted).  Without "facts to make plausible . . . an allegation that such harm is certainly impending," Plaintiffs lack standing to challenge the suspensions.  *In re Sci.*

---

[9] Although standing and mootness are similar doctrines, they are not identical.  *See generally Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190–92 (2000).  Because the suspensions had been lifted when Plaintiffs filed their operative complaint, this issue was present at the "outset" of this litigation, which makes standing the correct lens through which to analyze the cognizability of relief.  *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).

*Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 28 (D.D.C. 2014) (quotations omitted).

### 2.    Plaintiffs Have Alleged No Injury Caused by the Authorization of Sub-committees

Plaintiffs' second request fares no better.  They "ask the Court to [declare] that Defendant Austin's authorization of subcommittees to the Boards was "unlawful" and to enjoin Defendants from "creating or staffing" any such subcommittees.  Compl. ¶ 5.  That request again seeks prospective relief, so Plaintiffs again must allege "ongoing or imminent future injury."  *Silver*, 569 F. Supp. 3d at 9.

Defendants say Plaintiffs have not been harmed by the authorization of subcommittees.  ECF No. 39 at 57–58.  They observe that Plaintiffs have not alleged that any subcommittees have actually been brought into being.  ECF No. 39 at 58; *see also* Compl. at 44–46.  They argue that any future creation is "speculative."  ECF No. 39 at 58  And even if it happens, they contend, it will not affect Plaintiffs, who "do not . . . currently serve on any Board."  *Id.*  Finally, they explain that the size of each Board is "fixed by statute," which they think dispels any inference that the Secretary of Defense effectively "pack[ed]" the Boards.  *Id.* (quoting Compl. ¶ 23).

Plaintiffs again resist identifying an injury.  They say Defendants misunderstand the nature of the harm because "the suspensions, the terminations," and the creation of subcommittees, "are all of a piece."  ECF No. 42 at 53.  To the extent they acknowledge the need for an injury from the authorization of subcommittees, it is in their comparing this case to *Elrod v. Burns*, 427 U.S. 347 (1976), a case in which, by Plaintiffs' description, state "noncivil service employees . . . were fired or threatened with dismissal."  ECF No. 42 at 53.  They also state that Boards will be "stripped at the very least of a substantial fraction of their statutory duties."  *Id.* at 55.

Plaintiffs' resistance is unavailing.  No characterization of their claims can absolve them of the need to show standing for each form of relief they seek.  *See TransUnion*, 141 S. Ct. at 2208. So they must allege a certainly impending future injury attributable to the authorization of sub-committees.  *See Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*, 879 F.3d 339, 346 (D.C. Cir. 2018).  And *Elrod*—by their own characterization—has nothing to do with this claim for relief.  Its relevance, if any, concerns their removals from the Boards.

Defendants, though, miss the mark by pointing out that Plaintiffs do not now serve on the Boards.  Three plaintiffs seek an ordering restoring their terms of service to the Air Force Board. *See* Compl. ¶ 6 & n.5.  Without adjudicating that request, the Court cannot assume it will be denied, and so it will treat Plaintiffs as Board members for purposes of this form of relief.[10]

But even assuming subcommittees will eventually be created, Plaintiffs allege no facts to suggest that subcommittees would harm Board members.  Their statement that subcommittees will "strip[ ]" Boards of statutory duties is unsupported by factual allegations.  ECF No. 42 at 53.  And their characterization of the subcommittees as constituting Board "packing" are hard to square with the pleaded facts.  *Id.* at 53.  Given that any subcommittees will be "separate and distinct" from the Boards, Compl. at 44–46, there appears to be no risk that Board members' influence over work product will be diluted.  As Defendants point out, the Boards' sizes are fixed by statute. 10 U.S.C. §§ 7455(a), 8468(a), 9455(a).  If Plaintiffs' conclusions about the potential impact of subcommittees are based on anything more than speculation, the basis has not been shared with the Court.  If a court "can only speculate" about whether and how an injury will occur, that is

---

[10] Standing requires only that at least one plaintiff may seek each form of relief, not that all plaintiffs must be able to seek each form of relief.  *See J.D. v. Azar*, 925 F.3d 1291, 1323–24 (D.C. Cir. 2019).  Thus, it does not matter that some plaintiffs have not requested reinstatement.

"ordinarily fatal to standing." See *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017).

Moreover, the Boards' duties are nonrivalrous—another person's performing them need not prevent the Board from performing them too.  Congress has tasked the Board with visiting the academies, writing reports, making recommendations, and speaking with advisers.  *See generally* 10 U.S.C. §§ 7455(d)–(g), 8468(d)–(g), 9455(d)–(g).  So even if the Court were to assume that subcommittees will be created and that those subcommittees will be given roles that overlap with the Boards, there still appears to be no harm to the Boards' members.  They could still perform their statutory duties.

Because Plaintiffs' assertion of injury relies on speculation, and because even that speculation fails to reveal concrete harm, Plaintiffs lack standing to challenge Defendant Austin's authorization of subcommittees.

### 3.     The Court Could Redress Plaintiffs' Removals by Ordering Defendants Austin and McDonald to Treat Them As Board Members

That leaves Plaintiffs' request for reinstatement to the Air Force Board.  Compl. ¶ 6 & n.5.  Here, they have alleged harm.  No doubt, "removal from a federal office is an actual and concrete injury." *Spicer v. Biden*, 575 F. Supp. 3d 93, 96 (D.D.C. 2021); *accord Severino v. Biden*, 581 F. Supp. 3d 110, 115–16 (D.D.C. 2022).

But Defendants, for their part, challenge the redressability of these injuries.  ECF No. 39 at 25–33.  They contend that reinstating Plaintiffs to their positions would require the Court to enjoin the President, relief they argue is outside the bounds of this Court's power.  *Id.* at 26–29.

Plaintiffs reply that courts in this circuit have confronted this problem before and found solutions.  *See* ECF No. 42 at 21–24.  In other cases, they say, courts have ordered non-president defendants to treat the injured party as having been restored to her position without ordering the

president formally to reinstate her.  *Id.* at 21.  Whether or not they have named each potentially relevant party as a defendant is irrelevant, they argue, because the Court can construe Plaintiffs' naming of high-level, non-presidential executive-branch officials to "encompass subordinate branch officials" too.  *Id.* at 23 (quoting *Spicer*, 575 F. Supp. 3d at 97) (emphasis deleted).  And they point out that the Secretary of Defense and the designated federal officer of the Air Force Board are named defendants.  *Id.* at 23–24; *see also* Compl. ¶¶ 37, 51.

Defendants say an injunction against non-presidential defendants will not do.  ECF No. 39 at 29–33.  The Secretary of Defense, they claim, has no "specific oversight duties as to the Board, such as responsibility for coordinating its activities."  ECF No. 44 at 13 (quotation omitted and alteration adopted).  And the Board's designated federal officer, in their view, is a merely "administrative" official whose role "primarily involves calling and attending each meeting."  ECF No. 39 at 32.  Thus, they think enjoining those defendants would not give Plaintiffs relief.

Defendants likely are right that the Court cannot enjoin the President or subject him to declaratory relief.  *See Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010).  But the D.C. Circuit has explained that any difficulties created by that void can often be "bypassed[ ] because the injury at issue can be rectified by injunctive relief against subordinate officials."  *Swan v. Clinton*, 100 F.3d 973, 978 (1996).  And even if the named defendants could not alone provide all the desired relief, courts may construe the complaint to include other officials who collectively can "substantially redress" the injury.  *See id.* at 979–80.  To do otherwise would be to "elevate form over substance."  *Id.* at 980.  Applying those principles, two courts in this district have held that similar injuries—including Plaintiff Spicer's injury in having been removed from the Navy Board—were redressable.  *See Spicer*, 575 F. Supp. 3d at 97; *Severino*, 581 F. Supp. 3d at 115–16.

The Court agrees with the holdings of the *Spicer* and *Severino* courts.  Defendants try to distinguish *Spicer* by pointing out that the chair of the Navy Board was a defendant in that case, not just the designated federal officer.  ECF No. 39 at 32–33.  But that makes no difference.  If the designated federal officer has been ordered to treat some plaintiffs as members of the Air Force Board, he can ensure that the Board holds no meetings without them.  *See* 5 U.S.C. app. 2 § 10(3); *supra* note 5.  That relief plus a declaratory judgment establishing that some plaintiffs are members of the Air Force Board can "substantially redress [Plaintiffs'] injury."  *Swan*, 100 F.3d at 980. Besides, under *Swan*, the Court can construe Plaintiffs' complaint to include the chair and other Board members in their official capacities anyway.  *See id.* at 980 & n.3.

At bottom, even if the Court cannot provide Plaintiffs with "as complete a remedy" as conceivably possible, it can provide substantial enough relief "for standing purposes."  *Swan*, 100 F.3d at 980–81.  Thus, Plaintiffs have alleged facts that establish standing to challenge their removals from the Air Force Board.

## B.     Plaintiffs Have Not Stated a Claim for Their Removal from the Air Force Board

Plaintiffs' four claims related to their removals from the Air Force Board each present reasons why those removals might entitle them to relief.  Understood that way, Count II[11] and Count IV[12] amount to the same thing.  The APA directs courts to "hold unlawful and set aside agency action" that is "not in accordance with law" or "contrary to constitutional . . . power." 5 U.S.C. § 706.  In doing so, it "supplies a generic cause of action" to bring claims based on substantive law found elsewhere.  *See Trudeau v. FTC*, 456 F.3d 178, 188–89 (D.C. Cir. 2006)

---

[11] Plaintiffs' second claim is that the removals violated the APA.  Compl. ¶¶ 136–40.

[12] Plaintiffs' fourth claim is that the removals violated the "the Separation of Powers Doctrine." *See* Compl. ¶¶ 145–50.

(quotation omitted and alteration adopted). Thus, to state a claim under the APA—for contravention of the separation of powers or for any other reason—Plaintiffs must establish that the action they challenge was illegal. *See Rempfer v. Dep't of the Air Force*, 538 F. Supp. 2d 200, 207–08 (D.D.C. 2008). That is a "question of law," and so it is reviewable on a motion to dismiss under Rule 12(b)(6). *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Counts I and III purport to assert breach-of-contract and viewpoint-discrimination First Amendment claims, respectively.

So the Court must address three questions to determine whether Plaintiffs have stated claims for their removals from the Air Force Board. First, with respect to Counts II and IV, did the President violate the law by firing them? Second, with respect to Count I, have Plaintiffs plausibly alleged the elements of a breach-of-contract claim? Third, with respect to Count III, have Plaintiffs plausibly alleged the elements of a viewpoint-discrimination First Amendment claim? The answer to all three questions is no.

### 1.    The Statute Permitted the President to Fire Plaintiffs

Defendants claim that the President enjoys complete discretion to remove presidentially appointed Board members. ECF No. 39 at 33–44. They construe the statutory terms of office as limitations, not irrevocable grants. *Id.* at 34. Accordingly, they contend that the statute contains no explicit removal protection. *Id.* at 36–42. They conclude that the President has removal power incident to his appointment power. *Id.* at 34–36. They also argue that, even if ambiguity were present in the statute, the Court should choose their construction to avoid constitutional questions about the scope of the President's removal power. *Id.* at 42–44.

Plaintiffs say Defendants have omitted a crucial aspect of the statute. The six presidential appointments, they observe, are staggered such that a president can make only "*two* appointments in each particular year." ECF No. 42 at 26 (citing 10 U.S.C. §§ 9455(b), 7455(b), 8468(b)). If the

President could fire all six presidentially appointed Board members at will, they reason, it would create an untenable "hole in the[ir] membership." *Id.* They also suggest that at-will presidential removal conflicts with the Boards' purpose to "provide independent advice and recommendations." *Id.* (quotation omitted). And they point out that, although the statute contains no explicit removal protections, neither does it contain an explicit grant of presidential removal authority. *Id.* at 27. By contrast, the Air Force Board's chair is explicitly empowered to fire Board members for truancy. *Id.* (citing 10 U.S.C. § 9455(c)(2)).

More broadly, Plaintiffs argue that the many cases about inherent presidential removal authority are inapposite here because Board members are not officers of the United States. ECF No. 42 at 27–32. That is, Plaintiffs say Board members have an advisory function only and so do not hold "significant authority pursuant to the law of the United States." *Id.* at 27 (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)). That must be true, they explain, or else the statute's provision of congressional appointments to the Boards would violate the Appointments Clause of Article II, Section 2. *Id.* at 28–29; *see also Buckley*, 424 U.S. at 136. Implicit in that contention is the idea that a President's inherent removal authority does not extend beyond officers of the United States. *See generally* ECF No. 42 at 32–38. And Plaintiffs observe that no prior president has tried to fire a Board member. *Id.* at 32.

Plaintiffs' mélange of constitutional and statutory arguments lacks analytical rigor. The Court cannot leap to decide the scope of the President's constitutional removal authority without first asking "whether there is a nonconstitutional ground for deciding the case." *Kalka v. Hawk*, 215 F.3d 90, 97 (D.C. Cir. 2000). Courts must define that scope if, for example, a statute provides that an individual "cannot be removed by the President unless certain statutory criteria are met." *Seila Law*, 140 S. Ct. at 2192. But that formulation presupposes a statutory interpretation.

To follow the principle that courts should decide cases on statutory grounds whenever possible, the Court must first address whether the statute authorized the President to remove Plaintiffs. If it did, the inquiry is over; there is no separation-of-powers problem because Congress and the President effectively agree on whether the individual can be removed.[13]  If it did not, then—and only then—must the Court consider whether the President still has constitutional removal authority over Plaintiffs.  As explained below, the statute creating the Air Force Board empowered the President to fire presidential appointees, so this inquiry ends at part one.

Plaintiffs inadequately grapple with a key principle: "absent a specific provision to the contrary, the power of removal from office is incident to the power of appointment." *Carlucci v. Doe*, 488 U.S. 93, 99 (1988) (quotation omitted).  That is not a constitutional rule, but a "matter of statutory interpretation." *Id.*  And it has a long pedigree.  *See In re Hennen*, 38 U.S. (13 Pet.) 230, 259 (1839).  That rule and its pedigree are especially significant here because courts "assume that, when Congress enacts statutes, it is aware of relevant judicial precedent." *Ryan v. Valencia Gonzales*, 568 U.S. 57, 66 (2013).

Under that rule, Plaintiffs, former presidential appointees, must point to a specific statutory provision that prevented their firing.  They cannot.  They point only to three collateral statutory features—the term of office, limitations on the presidential appointment power, and the ability for the chair to remove absentee members—and their perception of the statute's purpose.  But

---

[13] The Court does not suggest that agreements between the executive and legislative branches can *never* contravene the separation of powers.  But violations in that context require an independent constitutional limitation, for example, the Presentment Clause.  *See Clinton v. City of New York*, 524 U.S. 417, 442–447 (1998) (holding unconstitutional a statute that gave the President power to cancel spending authorized by law).  The only specific constitutional provision Plaintiffs identify is Congress's authority to make rules regulating the armed forces.  *See* Compl. ¶¶ 145–50; U.S. Const. art. 1, § 8, cl. 14.  Even assuming that congressional power is relevant here, if a statute permits the President to fire an individual and the President does so, he has complied with Congress's rule, so no constitutional problem exists.

Congress knows how to codify an explicit removal protection. For instance, when it created the Consumer Financial Protection Bureau, it provided that the agency's director was removable only for "inefficiency, neglect of duty, or malfeasance in office." *Seila Law*, 140 S. Ct. at 2193 (quoting 12 U.S.C. § 5491(c)(3)). Its decision to say almost nothing about removal in the Air Force Board's statute is strong evidence that it did not wish for the statute to foreclose presidential at-will presidential removal. *Cf. Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 826 (2018). Thus, it is doubtful that anything less than an explicit removal protection could constitute a "specific provision" under *Carlucci*, 488 U.S. at 99. Still, the Court will explain why each of the attributes Plaintiffs identify do not advance their position.

Start with the term-of-office provision. It says that presidential appointees "serve for three years each except that any member whose term of office has expired shall continue to serve until his successor is designated by the President." 10 U.S.C. § 9455(b)(1). For one thing, courts have rejected the suggestion that a fixed term limit alone implies a limit on removal authority. *See Spicer*, 575 F. Supp. 3d at 99; *Pievsky v. Ridge*, 98 F.3d 730, 734 (3d Cir. 1996) ("[A] fixed term merely provides a time for the term to end."). But this statute helps Plaintiffs even less than a generic term-of-office provision. It explicitly recognizes that the President has a role in deciding when a Board member's term ends. Plaintiffs fail to explain why a member's "term of office" has not "expired" if the President fires her. *See* 10 U.S.C. § 9455(b)(1). Even if that is not the most natural reading of "expired," that possibility means that the term-of-office provision cannot defeat the longstanding presumption recognized by *Carlucci*.

As for limits on the President's appointment power, it is Plaintiffs who omit a crucial aspect of the statute, not Defendants. Plaintiffs say the President can appoint only two members in any year, ECF No. 42 at 26, but that limitation is not found in the text of the Air Force Board's statute.

*See supra* note 3.  It *is* found in the other two Boards' statutes, *id.*, but Plaintiffs have not pressed an unlawful-removal claim over those Boards, Compl. ¶ 6 & n.5.  The relevant statute says only that the "President shall designate persons each year to succeed the members designated by the President whose terms expire that year."  10 U.S.C. § 9455(b)(1).  That language is consistent with unfettered presidential removal power, so it cannot defeat the *Carlucci* presumption.

The termination-by-chair provision is ultimately no different.  It allows the chair to remove a member—any member who is not also a member of Congress, not just presidential appointees—if she "fails to attend two successive Board meetings, except in a case in which an absence is approved in advance, for good cause, by the Board chairman."  10 U.S.C. § 9455(c)(2)(A).  In construing that provision to imply that the President may not *also* remove Board members, Plaintiffs invoke the negative-implication canon.[14]  But "the force of any negative implication . . . depends on context."  *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013).  So the negative-implication canon is "overcome by contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion," *id.* (quotation omitted), and any interpretation based on the canon must be "sensible," *see NLRB v. Sw. General, Inc.*, 580 U.S. 288, 302 (2017) (quotation omitted).

Plaintiffs' interpretation is insensible, so context defeats the negative implication.  If empowering the chair to fire members is construed as an implicit exclusion of any other means or grounds for removing Board members, the result is that members could be fired only for truancy and not for, say, corruption or crimes of moral turpitude.  That would be a strange result.  Oddity is no reason to avoid applying a statute as-written, *see Cochise Consultancy, Inc v. United States*

---

[14] Another name for that canon is *expressio unius est exclusio alterius*.  It holds that things not mentioned are excluded.  *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002).

*ex rel. Hunt*, 139 S. Ct. 1507, 1513 (2019), but it counsels against the use of an interpretive canon

that is highly sensitive to context, *see United States v. Polanco*, 451 F.3d 308, 311 (3d Cir. 2006).

Because it is unlikely that Congress intended to protect Board members from removal for all af-

fronts except absenteeism, the Court finds that the termination-by-chair provision is just an addi-

tion to the removal-by-appointer background rule.  And even if that were not the best interpretation

of the statute's text, the question is at least close enough that any uncertainty on that score does

not outweigh the *Carlucci* presumption.

Finally, Plaintiffs' assertion that the statute's purpose is to provide "independent advice

and recommendations" lacks support.  ECF No. 42 at 26.  They cite only the requirements of

FACA, which apply to all advisory committees.  *See id.* at 26–27.  But "vague notions of a statute's

basic purpose" are entitled to little weight in statutory interpretation.  *See Stovic v. R.R. Ret. Bd.*,

826 F.3d 500, 505 (D.C. Cir. 2016) (quotation omitted and alteration adopted).  And even if Plain-

tiffs are right about the statute's purpose, their interpretation does not follow.  The Board's job is

to provide advice, and advice is only as useful as its recipient believes it to be.  One could just as

easily posit that fulfilling the statute's purpose requires plenary presidential removal power so that

the President is guaranteed to have confidence in those dispensing recommendations, making him

more likely to heed their advice.  In any event, an unsupported, ill-defined notion of the statute's

purpose that does not necessarily support Plaintiffs' interpretation cannot defeat the *Carlucci* pre-

sumption any more than the three textual arguments.

For those reasons, the Court reaches the same conclusion as the *Spicer* and *Severino* courts.

*See Spicer*, 575 F. Supp. 3d at 98–100; *Severino*, 581 F. Supp. 3d at 118–19.  The statute empowers

the President to fire presidentially appointed Air Force Board members, so there is no reason to

consider the scope of his constitutional removal authority.  Thus, the Court will dismiss Count II and Count IV.

### 2.    Plaintiffs Fail to Allege that Any Contract's Terms Prevented Removal

On Plaintiffs' breach-of-contract claim, Defendants argue that Plaintiffs have failed to allege the basic elements of a contract.  ECF No. 39 at 44–45.  In their view, the operative complaint contains no "facts supporting the existence of a contract," and merely repackages the fact that Plaintiffs were appointed to the Air Force Board.  *See id.*  And even if there were contracts, they contend that no pleaded facts would entitle Plaintiffs to the extraordinary remedy of specific performance.  *Id.* at 45.

Plaintiffs reply that an appointment to a Board "has to be a contract."  ECF No. 42 at 38. To support that conclusion, they say an appointment is offered and accepted for consideration— the promise to serve and the benefits of the office—and that Plaintiffs were harmed when the president fired them.  *Id.*  And they state without further explanation that the contract was "breached when the President summarily removed the Plaintiffs."  *Id.* (emphasis deleted).  They respond to Defendants' assertion that specific performance is unavailable by arguing that the "statutory independence" of the Boards makes this situation suitable for specific performance, contrary to the general rule.  *Id.* at 39–43.

Even assuming Plaintiffs had employment contracts, they say little about their *terms*.  But under federal law, Plaintiffs must allege "an obligation or duty arising out of the contract[s]" and "a breach of that duty."  *Red Lake Band of Chippewa Indians v. U.S. Dep't of the Interior*, 624 F. Supp. 2d 1, 12 (D.D.C. 2009).[15]  Implicitly, they argue that the government had a duty to allow

---

[15] The Court applies federal common law to this claim because Plaintiffs claim to be the beneficiary of "obligations . . . of the United States under its contracts."  *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988).

them to serve three-year terms, no matter the President's wishes.  Yet the only two candidates for

having supplied that term are the statute and the fact that no president had ever before fired Board

members.  *See* ECF No. 42 at 41 (arguing that "long-term convention and the statutes point to the

inability of the President to remove [Board] members").

Neither of those candidates can help Plaintiffs.  The Court agrees that, if Plaintiffs' ap-

pointments were protected by a contract, the contracts' terms must have come from the statute.

*Cf. Roedler v. Dep't of Energy*, 255 F.3d 1347, 1352 (Fed. Cir. 2001) ("[W]hen . . . the contract

implements a statutory enactment, it is appropriate to inquire into the governing statute and its

purpose.").  But the statute cannot have guaranteed them three-year terms because, as the Court

has already held, it permits the President to fire presidentially appointed Board members at will.

For the same reason, no amount of historical practice can compel a contrary conclusion.  *Cf.* U.C.C.

§ 2-208 (Unif. L. Comm'n 1977) ("[E]xpress terms shall control course of performance and course

of performance shall control both course of dealing and usage of trade.").[16]

Thus, Plaintiffs have not stated a breach-of-contract claim even if there were a contract to

breach.  So the Court will dismiss Count I.

### 3.    Plaintiffs Allege Neither Speech Nor Regulation of Speech

On Plaintiffs' First Amendment claim, Defendants say Plaintiffs have identified no "spe-

cific instances" of protected speech.  ECF No. 39 at 46.  And even if they had, Defendants argue,

it would not be protected speech because the only conceivably relevant statements would be those

made in Plaintiffs' official capacities.  *Id.*  In Defendants' view, the President may remove political

appointees because of policy disagreements without violating the First Amendment.  *Id.* at 47–48.

---

[16] "The Uniform Commercial Code is a source of federal common law and may be relied upon in
interpreting a contract to which the federal government is a party."  *O'Neill v. United States*, 50
F.3d 677, 684 (9th Cir. 1995).

For good measure, they point out that Plaintiffs have not pleaded a First Amendment retaliation claim. *Id.* at 46 n.13.

Plaintiffs acknowledge that they have neither identified nor "made any statements." ECF No. 42 at 43. Instead, they claim to have been "attacked for what is presumed to be their unexpressed views." *Id.* Based on the comments of President Biden's then press secretary, Plaintiffs explain that this claim is based on an "improper motive" behind their firing, the desire to purge those who are not "aligned" with the president's "values." *Id.* at 45–46 (quotation omitted).

Viewpoint discrimination is "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). But that is because it is "an egregious form of content discrimination," a "regulation of speech." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Thus, a viewpoint-discrimination claim requires that the government "has impermissibly interfered with the free exchange of ideas by imposing trade barriers on certain viewpoints but not on others." *See Connection Distrib. Co. v. Holder*, 557 F.3d 321, 329 (6th Cir. 2009).

Plaintiffs allege neither speech nor regulation. Their complaint contains no suggestion that they have faced impediments to saying anything they wish, and it concedes that they have not tried to speak on any particular topic. So they have not stated a viewpoint-discrimination claim.

Moreover, although Defendants are right that Plaintiffs have not pleaded a First Amendment retaliation claim, it would not matter if they had. The first element of such a claim is that a plaintiff has "engaged in conduct protected under the First Amendment." *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 46 (D.D.C. 2021) (quotation omitted). Plaintiffs have not satisfied that element for the same reason: They have not "made any statements." ECF No. 42 at 43.

Given that Plaintiffs seek to vindicate the "freedom of speech," U.S. Const. amend. I, it should come as no surprise that they must allege at least a specific desire to speak. Because they have not, they have failed to state a claim. So the Court will dismiss Count III.

*     *     *

Thus, none of Plaintiffs' claims can survive Defendants' motion to dismiss. That conclusion depends mostly on statutory interpretation and the nature of Plaintiffs' claims, so further allegations consistent with those already pled could not cure the deficiency. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (per curiam). Moreover, Plaintiffs have already amended their complaint four times, and the Court has explained that, "absent extraordinary circumstances, [it would] not grant Plaintiffs further leave to amend the complaint." Min. Order of Apr. 7, 2022. So the Court will dismiss Plaintiffs' claims with prejudice.

## IV.    Conclusion

For all the above reasons, the Court will grant Defendants' motion to dismiss. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 21, 2023